ALBANY,
Feb. 1825.

The People
v.
Van Slyck.

---

THE PEOPLE ex rel. VAN VOAST against VAN SLYCK.

[NOTE. The Court allowed this cause a preference on the calendar, on the ground of its being upon information, in nature of a *quo warranto*.]

Schenectady county, to wit: Samuel A. Talcott, Attorney General of the People of the state of New York, who sues for the said People in this behalf, comes here into the of canvassers, in his favor, convened pursuant to the 10th section of the *act for regulating elections*, passed April 17th, 1822, (sess. 45, ch. 250)

The duties of the board are ministerial, not judicial. A certiorari, therefore, is not the proper remedy.

The act does not require that one of the town inspectors be appointed to preside at the election.

All the inspectors attending, equally preside, and have equal powers.

Some one of these must be appointed by a majority of those who preside, to deliver the statement of the town vote to the county clerk, and attend the county board of canvassers as a member.

This appointment may be written or parol. A written appointment is preferable.

If the statement of the town votes be delivered to the county clerk by a town inspector, and the fact of his being so, is not questioned by the canvassers, he ought not to be excluded; for the delivery of the statement, and his attendance to perform the duties of a canvasser, are, *prima facie*, evidence that he was regularly appointed.

The certificate of appointment, if in writing, is good evidence, though not signed by a majority of the town inspectors till after the town poll closed.

The inspector appointed, may be one of the appointers of himself, and sign the certificate.

If the votes of a town are improperly excluded, by which a majority of votes are canvassed and allowed to a candidate for the office of sheriff, who receives a certificate, takes the oath of office, &c., and acts as sheriff, judgment of ouster will be given against him, on an information in nature of a *quo warranto* being filed *ex relatione* the one who had the actual majority of votes.

A special verdict in an information in nature of a *quo warranto* allowed a preference in argument on the calendar.

Pleadings in an information in nature of a *quo warranto*, against one who unlawfully intruded into the office of sheriff, viz.: The information; plea, setting forth the defendant's title under the *act regulating elections*, (sess. 45, ch. 250.) Replications and issues, at length.

An information in nature of a *quo warranto* lies against one intruding into the office of sheriff, in consequence of an unlawful decision of the county board of canvassers.

Supreme Court of Judicature of the state of New York, before the Justices of the People of the state of New York, of the Supreme Court of Judicature of the same People, at the Capitol in the city of Albany, on Saturday, the 18th day of January, A. D. 1823, in January term, and for the said People of the state of New York, at the relation of Gershom Van Voast, of the city of Schenectady, according to the form of the state in such case made and provided, gives the Court here to understand and be informed, that the office of sheriff of the county of Schenectady hath been, for a long time heretofore, to wit, for the space of ten years last past, and upwards, and still is a public office, and an office of great trust and pre-eminence within the state of New York, to wit, at the city and in the county of Schen-. ectady aforesaid; and that Harmanus A. Van Slyck, of the county of Schenectady aforesaid, without any legal warrant, grant or right whatsoever, hath, for the space of fourteen days now last past, and more, held, used and executed the said office of sheriff of the county of Schenectady, without any legal warrant, grant or right, and still doth hold, use and execute the said office, to wit, at the city and in the county aforesaid; and that the said Harmanus A. Van Slyck, for and during all the time last above mentioned, without any legal warrant, grant or right whatsoever, at the city and in the county of Schenectady, has claimed and still does claim, to be sheriff of the county of Schenectady aforesaid, and to have, use and enjoy all the liberties, privileges and franchises to the office of sheriff of the county of Schenectady aforesaid, belonging and appertaining, which said office, liberties, privileges and franchises, he, the said Harmanus A. Van Slyck, for and during the whole time last above mentioned, upon the said People hath usurped, intruded into and unlawfully held, and shown still doth usurp intrude into and unlawfully hold, that is to say, at the city and in the county of Schenectady aforesaid, in contempt of the People of the state of New York, and to their great damage and prejudice, and also against their dignity.

Plea.

And the said Harmanus A. Van Slyck, by Alonzo C. Paige his attorney, comes, and having heard information, complains that he is by color thereof previously used and disquieted

**and** this unjustly; because, protesting that the said information, and the matters therein contained, are not sufficient in law; to which said information the said Harmanus is not bound by the law of the land to answer; yet for plea, in this behalf, the said Harmanus saith, that, true it is, that the office of sheriff of the county of Schenectady hath been, for the space of ten years last past, and upwards, and still is a public office, and an office of great trust and preeminence within the state of New York, to wit, at the city and in the county of Schenectady aforesaid, as in the said information is suggested; but the said Harmanus further saith, that an election was held in the several towns and wards of the said county of Schenectady, for the election, among other officers of the state of New York, and of the said county of Schenectady, of sheriff of said county of Schenectady, on the first Monday of November, A. D. 1822, and continued from day to day, for three successive days, including said first Monday of November, pursuant to an act of the legislature of the People of the state of New York, entitled an act for regulating elections, passed April 17th, 1822. And the said Harmanus further saith, that after the said election, to wit, on the Tuesday next following the said election, such of the inspectors of elections as did attend, and had been appointed by a major part of the inspectors, who had presided at the said election in the several towns and wards in the said county, according to the directions of the said act, to attend at the clerk's office in said county, and in person to deliver to the clerk of said county, at the office, or to his deputy, or to the keeper of said office, a true copy of the statement of the votes given at said election, in the respective towns and wards in said county, in which they were respectively inspectors as aforesaid, for (among other officers) the officer of sheriff aforesaid, did attend at the office of the clerk of said county, and in person, did deliver to the clerk of said county, a true copy of the statement of votes or certificate of the inspectors of the respective towns and wards in said county, of the votes given as aforesaid, for the officers aforesaid; and they, the said inspectors, so attending as aforesaid, having been appointed as aforesaid, and having respec-

setting forth annual election on the 1st Monday of November, 1822; and its continuance for three days;

the assembling of the county board of inspectors, on the Tuesday following,

the delivery of the copy of statement of votes, &c.,

ALBANY,
Feb. 1825.

The People
v.
Van Slyck.

The organi-
zation of the
board, by the
choice of a
chairman, the
county clerk
acting as se-
cretary,

the calculation
of the votes,

determination
upon the per-
sons elected,

certificate,

and record
thereof, and
delivery of co-
py to each can-
didate elected;

determination
that the defen-
dant was elect-
ed sheriff of
Schenectady,

tively attended in person as aforesaid, at the time and place aforesaid, and having delivered their respective statements or certificates of the votes given as aforesaid, to the clerk of said county as aforesaid, did then and there, to wit, on the said Tuesday next following said election, at the office of the said clerk, according to the directions of, and in the manner required by the aforesaid act of the said legislature, together with the clerk of said county, form themselves into a board of canvassers, and appoint one of their number, to wit, Simon A. Groot, chairman, and the clerk of said county, to wit, Jelles A. Fonda, was present at and acted as secretary of said board, and as one of the members thereof; and the said Harmanus further saith, that the said board of canvassers, being so formed, and organized as aforesaid, did then and there proceed in the manner, and at the time required by the aforesaid act, to calculate and ascertain the aggregate amount or whole number of votes given as aforesaid, and delivered to the said clerk as required by the said act, for the respective candidates voted for as members of assembly, sheriff, clerk, and coroners of said county, respectively, at said election; and did thereupon determine, conformable to the aforesaid statements or certificates of votes given as aforesaid, and delivered as aforesaid, to the clerk aforesaid, by the inspectors of election of the several towns and wards in said county, as aforesaid, appointed as aforesaid, upon the persons respectively duly elected, by the greatest number of votes in said county, as member of assembly, sheriff, clerk and coroners, of said county; and the said board of canvassers did then and there further, in pursuance of the directions of said act, make and cause to be subscribed by their aforesaid chairman and secretary, with their proper names and hand-writing, a certificate of such determination, and caused the same to be recorded in a book kept in the office of the clerk of said county for that purpose, and a true copy thereof, subscribed as aforesaid, to be delivered to each of the persons so elected to the respective offices of member of assembly, sheriff, clerk and coroner of said county; and the said Harmanus further saith, that the said board of canvassers of the said county of

Schenectady, so formed and organized as aforesaid, for the purpose aforesaid, upon calculating and ascertaining the aggregate amount, or whole number of votes given and delivered as aforesaid, for the respective candidates for the offices of sheriff, clerk and coroner of said county, at said election as aforesaid, among other things required of them by law, did thereupon determine conformably to the statements or certificates delivered as aforesaid, to the clerk as aforesaid, that he, the said Harmanus A. Van Slyck, was duly elected by the greatest number of votes in said county, as sheriff of said county; and that said board of canvassers, upon such determination as aforesaid, did then and there, among other things required of them by law, make, and cause to be subscribed by their chairman and secretary aforesaid, with their proper names and hand-writing, and to be recorded in the clerk's office of said county as aforesaid, a certificate of such determination, that the said Harmanus had been duly elected as aforesaid as sheriff of said county as aforesaid; and that a true copy of said certificate of said board of canvassers, so made and subscribed as aforesaid, was by the said board of canvassers, caused to be delivered to him, the said Harmanus, so elected as aforesaid, to the said office of sheriff of said county as aforesaid, to wit, at the city and in the county of Schenectady aforesaid; which said certificate, the said Harmanus brings here into Court. And the said Harmanus further saith, that having been duly elected sheriff of said county as aforesaid, and having received a true copy of the certificate of the determination of the board of canvassers, in the premises as aforesaid; he, the said Harmanus, thereafter, to wit, on the first day of January, A. D. 1823, at the city of Schenectady, in said county, in due form of law, entered into a bond to the People of the state of New York, in the penal sum of five thousand dollars, with two sureties, to wit, John Haverly and Christian Haverly, of the town of Glenville, in the county aforesaid, being freeholders in said county, jointly and severally, in said sum of five thousand dollars, to answer to the People of said state, and the parties, if any should complain, according to the act in such

*Margin notes:*
ALBANY, Feb. 1825.

The People v. Van Slyck.

making, and recording,

and delivering a copy of the certificate thereof to the defendant,

and his entering into a bond with sureties, pursuant to the statute,

The People
v.
Van Slyck.

which was filed with the clerk, who determined on the competency of the sureties,

taking the oath of office,

being a substantial freeholder.

And that thereupon he was, on, &c. duly elected, appointed, qualified and admitted into the office of sheriff; and still is sheriff of Schenectady, &c. and by virtue thereof, has exercised the office, &c.

and traversing the usurpation.

case made and provided; which said bond was then and there duly filed in the office of the clerk of said county of Schenectady, he, the said clerk of the said county, then and there judging of, and determining the competency of said sureties. And the said Harmanus further saith, that, upon filing said bond in the office of the clerk as aforesaid, to wit, on the first day of January, A. D. 1823, at the city and in the county aforesaid, he, the said Harmanus, did, in due manner and form, take and subscribe the oath for the due execution and faithful discharge of the duties of the office of sheriff of said county, as by law in such case is required, before Jelles A. Fonda, Esquire, clerk of the said county of Schenectady, who then and there had a lawful and competent authority to administer the same in that behalf. And the said Harmanus further saith that at the time of the said election, and on the said first day of January, A. D. 1823, he the said Harmanus then was, and still is a substantial freeholder, to wit, at the town of Rotterdam, in said county of Schenectady. And thereupon, he, the said Harmanus, to wit, on the said first day of January, A. D. 1823, was then and there duly elected, appointed, qualified and admitted, according to the several statutes in such cases made and provided, into the said office of sheriff of said county of Schenectady, by reason of which said premises, he the said Harmanus then and there became and was still and is sheriff of said county, to wit, at the county of Schenectady aforesaid, by virtue whereof the said Harmanus, for all the time in said information, in that behalf mentioned, hath used and exercised, and still doth use and exercise, the said office of sheriff of the said county of Schenectady; and hath there claimed, and still doth claim, to be sheriff of said county of Schenectady, and to have, use and enjoy all the liberties, privileges and franchises, to the said office of sheriff of the county of Schenectady aforesaid, belonging and appertaining, as it was lawful for him to do. Without this, that the said Harmanus hath usurped the said office, liberties and franchises upon the said People of the state of New York, in manner and form, as, by the said information, is above supposed; all which said several matters

and things, he the said Harmanus is ready to verify, as the Court shall consider; whereupon he prays judgment, and that the aforesaid office, liberties, privileges and franchises, in form aforesaid claimed, by him the said Harmanus, may, for the future, be allowed to him, and that he may be dismissed and discharged by the Court hereof, and from the premises aforesaid. And the said Samuel A. Talcott, Esquire, Attorney General of the people of the state of New York, who for the said people, at the relation of the said Gershom Van Voast, prosecuted in this behalf, being present here in Court, and having heard the said plea of the said Harmanus A. Van Slyck, by him above pleaded in bar read, for the said people, saith, that, for any thing by him, the said Harmanus A. Van Slyck, therein alleged, the said people ought not to be barred from having and maintaining their aforesaid information against him ; because, protesting, that the said plea of the said Harmanus A. Van Slyck, and the matters therein contained, are insufficient in law to bar the said people from having and maintaining their aforesaid information against the said Harmanus A. Van Slyck, for replication nevertheless, in this behalf, the said Attorney General saith, that, true it is, that an election was held in the several towns and wards of the said county of Schenectady, for the election (among other officers of the state of New York, and of the said county of Schenectady,) of sheriff of said county of Schenectady, on the first Monday of November, A. D. 1822, and continued from day to day, for three successive days, including said first Monday of November, pursuant to an act of the legislature of the people of the state of New York, entitled " an act for regulating elections," passed April 17th, 1822 ; and that after the said election, to wit, on the Tuesday next following the said election, such of the inspectors of election as did attend, and had been appointed by a major part of the inspectors, who had presided at the said election, in the several towns and wards in the said county, according to the directions of the said act, to attend at the clerk's office in said county, and in person to deliver to the clerk of said county, at the office, or to his deputy, or to the keeper of said office, a true copy of the

ALBANY,
Feb. 1825.

The People
v.
Van Slyck.

Replications;
1. Admitting
the election,

and the attendance of the inspectors on the next Tuesday, &c.

The People
v.
Van Slyck.

and delivering
the certificates
of inspectors,
as stated in the
plea;
but denying
that they for-
med them-
selves into a
board of coun-
ty canvassers
as stated in the
plea:

and issue to
the country;

2. Denying
that they as-
certained the
votes, &c.

and the like
issue;
3. Denying
that they de-
termined on
the persons
elected.

statement of the votes given at said election, in the respec tive towns and wards in said county, in which they were respectively inspectors as aforesaid, for (among other offi- cers) the office of sheriff aforesaid, did attend at the office of the clerk of said county, and in person did deliver to the clerk of said county a true copy of the statement of votes, or certificate of the inspectors of the respective towns and wards in said county, of the votes given as aforesaid for the officers aforesaid. But the said Attorney General, for the said people further saith, that the said inspectors attending as aforesaid, having been appointed as aforesaid, and having respectively attended in person as aforesaid, at the time and place aforesaid, and having delivered their respective statements or certificates of the votes given as aforesaid, to the clerk of said county as aforesaid, did not then and there, to wit, on the said Tuesday next following said election, at the office of the said clerk, according to the directions of, and in the manner required by the afore- said act of the said legislature, together with the clerk of said county, form themselves into a board of canvassers, and appoint such chairman, and have such secretary, as in the said plea of the said Harmanus is mentioned ; and this the said Attorney General prays may be inquired of by the country, and the said Harmanus doth the like, &c. And the said Attorney General further saith, that the said supposed board of canvassers did not, at the time, place and in the manner in the same plea alleged, proceed to calculate and ascertain the aggregate amount or whole number of votes given as aforesaid, and delivered to the said clerk as required by the said act, for the respective candidates voted for as members of assembly, sheriff, clerk and coroners of said county respectively, at said election ; and this, &c.    And the said Attorney General further saith, that the said supposed board of canvassers did not de- termine, conformable to the aforesaid statements or certi- ficates of votes given as aforesaid, and delivered as afore- said to the clerk aforesaid, by the inspectors of election of the several towns and wards in said county appointed as aforesaid, upon the persons respectively duly elected by the greatest number of votes in said county, as members of

assembly, sheriff, clerk and coroners of said county; and this, &c. And the said Attorney General further saith, that the said supposed board of canvassers did not, at the time and place, and in the manner in the said plea, for that purpose mentioned, cause to be subscribed, by the supposed chairman and secretary, such certificate of such determination, as in the said plea is alleged; and this, &c. And the said Attorney General further saith, that the said supposed board of canvassers did not cause such supposed certificate of such supposed determination, as in the said plea is alleged, to be recorded in a book kept in the office of the clerk of said county for that purpose; and this, &c. And the said Attorney General further saith, that the said supposed board of canvassers did not cause a true copy of such supposed certificate, subscribed as in the said plea is alleged, to be delivered to each of the persons so elected, to the respective offices of member of assembly, sheriff, clerk and coroner of said county; and this, &c. And the said Attorney General further saith, that the said supposed board of canvassers of the said county of Schenectady did not determine, conformably to the statements or certificates delivered as aforesaid to the clerk aforesaid, that, he, the said Harmanus, was duly elected by the greatest number of votes in said county, as sheriff of said county, as in the said plea is alleged; and this, &c. And the said Attorney General further saith, that the said supposed board of canvassers did not make and cause to be subscribed by their supposed chairman and secretary, and to be recorded in the clerk's office of said county, a certificate of a determination that the said Harmanus had been duly elected sheriff of said county, as in the said plea is alleged; and this, &c. And the said Attorney General further saith, that a true copy of said last mentioned supposed certificate of said supposed board of canvassers, made and subscribed as in the said plea is alleged, was not, by the said supposed board of canvassers, caused to be delivered to the said Harmanus as in the said plea is supposed; and this, &c. And the said Attorney General further saith, that the said Harmanus was not elected sheriff of the said county of Schnectady, as in the said plea is supposed; and this, &c. And the

ALBANY, Feb. 1825.

The People v. Van Slyck.

and the like issue;

4. Denying that they made a certificate of such determination, and the like issue;

5. Denying that they caused it to be recorded, and the like issue;

6. Denying that they caused it to be delivered, and the like issue;

7. Denying that they determined that the defendant was elected sheriff, and the like issue;

8. Denying that they made and caused to be recorded a certificate of such determination, and the like issue;

9. Denying that any copy of such certificate was delivered to the defendant, and the like issue;

10. Denying that the defendant was elected sheriff and the like issue:

ALBANY,
Feb. 1825.

The People
v.
Van Slyck.

11. Admitting that the defendant entered into the bond, and took the oath, and was a freeholder as mentioned in the plea, but denying that the defendant was sheriff,

and the like issue.

Special verdict, finding

the number of votes, canvass,

certificate,

delivering of it to clerks,

destruction of poll books and ballots.

said Attorney General further saith, that true it is that the said Harmanus, at the time and place for that purpose in the said plea mentioned, did enter into such bond in such penal sum, with such sureties and condition, and that such bond was filed in such office as in the said plea alleged, and also that the said Harmanus did, on the day and year, and at the place in the said plea alleged, take and subscribe such oath before the said Jelles A. Fonda, as is also in the said plea alleged; and further, that the said Harmanus, on the first day of January, A. D. 1823, was, and still is a substantial freeholder, to wit, at the place in the said plea for that purpose mentioned; but the said Attorney General further saith, that the said Harmanus was not on the said first day of January, or at any time since, nor is he now, sheriff of the said county of Schenectady, as in the said plea is alleged; and this, &c.

Upon the above pleadings, the cause was tried before DUER, C. Judge, at the Schenectady Circuit, in September, 1824, when the jury found a special verdict as follows: That at the election mentioned in the pleadings, the defendant received 758 votes, and that the relator received 768 votes, from the electors, for the office of sheriff of the county of Schenectady, which votes were duly canavssed and estimated by the inspectors of election, at the respective polls held in the several wards and towns of the county; and the names of the several candidates voted for at such election were set down in writing with the number of votes, in words at full length, given for the candidates for the said office of sheriff, and certified and subscribed by the inspectors with their own proper names thereto; and that the inspectors did, within two days thereafter, cause to be delivered to the respective town clerks, and clerk of the city of Schenectady, in the county of Schenectady, in the several towns and wards in which such votes were taken, one copy of the statement to be by them respectively entered of record in their office; that the poll books and ballots made and taken at the election were immediately, upon the making and subscribing the statements or certificates, destroyed by the inspectors; that before the commencement of the election, the secretary of

state did cause the act of the legislature, entitled " an act for regulating elections," passed April 17th, 1822, to be printed and distributed to the clerks of the respective counties of this state, and did prepare certain forms for carrying this act into effect, in pursuance of the directions of the 30th section ; and further, that among the forms prepared by the secretary of state, was one in the words and figures following, that is to say, " *No. 25—form of appointment by the inspectors of election of one of their own body [section IX.]* We, the inspectors of election in the town of       [or in       ward of the city of       ] in the county of       do appoint       , one of the said inspectors, to preside at the election to be held this day, and the two succeeding days in the said town [or ward] for [specify the officers to be elected] and to do and perform such other duties as appertain to him as presiding inspector, by virtue of the act for regulating elections.   Dated, &c.

} <em>Inspectors of<br>election.</em>

Note—This appointment must be made before the poll is opened.'' Which form was printed with, and annexed t, the act, and distributed by the secretary therewith, to the several county clerks of this state.   That in all the towns and wards of the county of Schenectady, except in the town of Niskayuna, a majority of the inspectors who presided at the election did, before the poll of election was opened, appoint one of their number to preside at the election, and did subscribe, and give to the person so appointed to preside, a certificate in the form above prepared and distributed by the secretary of state, with the blanks left by the secretary, properly filled up, as to names, date and place. That Jacob C. Van Vranken, Peter D. Van Vranken, and Cornelius E. Tymesen were inspectors of, and presided at and held the poll of the election in the town of Niskayuna, one of the towns of the county ; and that Jacob C. Van Vranken and Peter D. Van Vranken, after the close of the poll in the last mentioned town, did appoint Tymesen to attend at the clerk's office of the county of Schenectady, and in person to deliver to the clerk at the office, or to the

*Margin notes:*
ALBANY, Feb. 1825.

The People v. Van Slyck.

The printing and distribution of the act regulating elections, by the secretary of state, with forms,

form of appointing president of town board,

when to be made,

made in all the towns except Niskayuna,

Inspectors of Niskayuna,

two of whom appointed C E. T. after the close of the poll, to attend and perform duties at county board,

The People
v.
Van Slyck.

but not in writing

They delivered to him a copy of statement of votes,

which he delivered to the county clerk.

Inspectors who attended county board.

Formation of the county board,

deputy or keeper of the office, a true copy of the statement of votes so given at the election in the town of Niskayuna, certified by him and the other inspectors, and to perform the duties prescribed for the person so appointed in and by the tenth section of the act. But that the inspectors of election in the town of Niskayuna did not, at the time of making the appointment of Tymesen, make or subscribe any certificate in writing, that he was appointed for any of the last mentioned purposes. That the inspectors of election in the town of Niskayuna did, at the time of his appointment, deliver to Tymesen a true copy of the statement of votes, given at the said election in the town of Niskayuna, certified by all the inspectors who attended the election in the town, with which, last mentioned certificate he did, after his appointment, to wit, on the Tuesday next following the election, at one o'clock in the afternoon of that day, attend at the clerk's office of the county of Schenectady; and did, in person deliver the last mentioned certificate to the clerk, with whom the same has ever since remained; of which delivery, all the canvassers herein next mentioned at the time of their meeting had notice. That on Tuesday next following the election, at the hour of one o'clock in the afternoon, the following persons, having been duly appointed and received certificates in writing of that fact, to attend at the clerk's office of the county of Schenectady, for the purpose expressed in the tenth section of the act, did also attend at the clerk's office, and did deliver to the clerk true copies of the statements of votes taken at the election in their respective towns and wards, duly certified, that is to say, John F. D. Vedder, from the town of Duanesburgh, (and thus naming the inspectors who attended from their respective towns.) That these inspectors, together with Tymesen, from the town of Niskayuna, and Jelles A. Fonda, the county clerk, being on the day and hour last mentioned, and before four o'clock in the afternoon of the same day, so assembled and attending at the county clerk's office for the purpose, did form themselves into a board of canvassers, and did appoint Simon A. Groot chairman of the board, and Jelles A. Fonda being present, was secretary thereof.

That immediately after the appointment of the chairman, the several persons so attending the board were required to produce written certificates of their appointment as members, from the majority of the inspectors of their respective towns and wards; and that all the canvassers so attending did produce such certificates, except Tymesen, who told the canvassers, that he had received no such written certificate of appointment from the inspectors who held the poll of the election in the town of Niskayuna; but that he was so appointed without writing; whereupon the canvassers did determine by a vote, that Tymesen had no right to a seat as a member of the board of canvassers, and did exclude him from the board. That after this determination of the canvassers, and before the hour of four o'clock in the afternoon, Tymesen did procure a paper writing in the following words: "We, the inspectors of the election in the town of Niskayuna, in the county of Schenectady, do appoint Tymesen, one of the inspectors of said election, to preside at the election to be held in said town, for the officers to be elected in the said county, on the fourth day of November, and the two succeeding days, in the year one thousand eight hundred and twenty-two, to do and perform all such duties as appertain to the said election, by virtue of the act regulating elections. Dated this fourth day of November, 1822." Which was signed by Jacob C. Van Vranken and Cornelius E. Tymesen, as inspectors of election of the town of Niskayuna, on the Tuesday next following the election. That Tymesen did offer this writing to the canvassers, and did again claim a seat with them, as a member of the board of canvassers, before the hour of four o'clock in the afternoon of the Tuesday next following the election, and did inform the canvassers, so assembled as a board of canvassers, that himself and Jacob C. Van Vranken were a majority of the inspectors who had presided at the poll of the election in the town of Niskayuna; but the said canvassers did a second time, by vote, determine, that Tymesen had no right to a seat with the board, and did exclude him therefrom, alleging, among other reasons, for excluding him, that the writing was not subscribed by a majority of the inspectors, who had presided at the poll

ALBANY, Feb. 1825.

The People
v.
Van Slyck.

who were required to produce written certificates, which were produced by all except T. who was excluded from the board.

T. afterwards, and before 4 o'clock, produced a certificate. Form thereof;

On this, T. claimed a seat at the county board,

which was again denied.

The People
v.
Van Slyck.

The board then calculated the number of votes,

and adjourned to 9 o'clock A. M. of the next day.

T. then procured another certificate of his appointment.

Form.

of the election in Niskayuna, exclusive of Tymesen.    That after this determination, and after the hour of four o'clock of the afternoon of the Tuesday next following the election, they, with the exception of Tymesen, proceeded to calculate and ascertain the whole number of votes, which were given at the election for the several persons voted for as governor, lieutenant governor, senator, a representative in the congress of the United States, member of assembly, sheriff, clerk of the county, and coroners, at the election in the first and second wards of the city of Schenectady ; and then adjourned the further canvass of the votes of the county and their meeting until nine o'clock in the forenoon of the following day.    That after this adjournment, and before the hour to which the canvassers had adjourned their meeting, Tymesen procured another paper writing or certificate in the words following : " We, the majority of the inspectors actually presiding at the election in the town of Niskayuna, in the county of Schenectady, on the fourth day of November instant, and the two succeeding days, in the said town, for governor, lieutenant governor, four senators, an assemblyman, sheriff, county clerk, four coroners, and one representative to congress, do certify that we did, on the sixth day of November instant, appoint Cornelius E. Tymesen, also actually presiding at said election, to do and perform such duties as appertain to him by virtue of such appointment, and as are prescribed in the tenth section of the act for regulating elections, passed April 17th, 1822. Dated 12th November, 1822 ;" which last mentioned certificate was signed by Peter D. Van Vranken and Jacob C. Van Vranken as inspectors.    That on the 13th day of November, A. D. 1822, at the hour of nine o'clock in the forenoon, being the day and hour to which the canvass of the remainder of the votes of the county, and the meeting of the canvassers were adjourned, and immediately after the canvassers had met, and were about to continue the canvass of the remainder of the votes, Tymesen, accompanied by Jacob C. Van Vranken and Peter D. Van Vranken, did appear before the board, and Tymesen did present the last mentioned certificate to the canvassers, and Jacob C. Van Vranken and Peter D. Van Vranken offered

Proof offered of the appointment of T.,

to the board to make oath, that Tymesen had been appointed by the inspectors who presided at the poll in the town of Niskayuna, at the election, to attend with a certificate of the votes of the town of Niskayuna, at the clerk's office of the county, as a member of the board of canvassers, and Tymesen did claim a seat at, and to be a member of the board, and to act as one of the canvassers of the votes of the county, so given at the election; but a majority of the canvassers refused to receive any evidence of the appointment of Tymesen as one of the board, alleging, among other reasons therefor, that such proof ought to have been offered previous to the hour of four o'clock in the afternoon of the Tuesday next following the election; and did thereupon, a third time, by vote, determine, that Tymesen had no right to a seat at the board as a member thereof; and did again exclude him therefrom. That the remaining canvassers did proceed to calculate, estimate, and ascertain the remainder of the votes given at the election; and having completed such estimate and calculation, and ascertained the amount of votes given at the election, a motion was made by one of the canvassers, and seconded by another, that they should calculate, estimate, and ascertain the number of votes given in the town of Niskayuna, which motion the chairman refused to put to vote. Whereupon, one of the canvassers made a motion, that the chairman and secretary of the canvassers should sign a certificate of the result of the canvass of the votes of the county, as it had been obtained by excluding the votes of the town of Niskayuna, and from canvassing the votes given in the other towns and wards of the said county, which was carried by the votes of a majority of the canvassers; and that, thereupon, the chairman and secretary did sign a certificate, which commenced with the following words; "At a meeting of the board of canvassers, duly organized and held in and for the county of Schenectady, at the clerk's office in the city of Schenectady, in said county, on the 12th and 13th days of November, in the year 1822, pursuant to the act entitled, 'an act for regulating elections,' passed April the 17th, 1822, Simon A. Groot was chosen chairman,

ALBANY,
Feb. 1825.

The People
v.
Van Slyck.

whose seat was
again denied.

Final canvass,
and the proceedings accompanying it.

Certificate
thereof;

and Jelles A Fonda, clerk of the said county, was, *ex officio*, secretary of the said board, the following persons appeared and constituted the said board, they being inspectors of elections in the several wards and towns in the said county, and having been respectively appointed by the major part of the inspectors of their respective wards and towns, to preside at an election held therein, on the 4th day of November, 1822, and the two succeeding days inclusive, for the purpose of choosing one member of assembly, one sheriff, four coroners and one clerk, that is to say, John N. Marselis, of the first ward, Simon A. Groot, of the second ward, none admitted of the town of Niskayuna. The certificates and statements of the votes of the town of Niskayuna were denied acceptance. The inspectors had neglected the necessary appointment for a presiding inspector, pursuant to the 10th section of the act regulating elections, passed April 17th, 1822. Harmanus A. Van Slyck, of the town of Rotterdam, (and so of each town.) The board then proceeded to calculate and ascertain the whole number of votes, given at such election, in the said county for the several persons voted for the offices above specified; and thereupon, the said board do, according to the act aforesaid, set down in writing the names of the several candidates so voted for at such election, for any and every of the offices aforesaid, and the numbers of votes in words written at full length, which were given at such election, for the said candidates respectively." That this said certificate then contained a statement of the votes given in each town and ward of the county, except in the town of Niskayuna, for (among other officers) the candidates for the office of sheriff, by which statement it appears, that the defendant received at the election, in the towns and wards of the county, exclusive of the votes of the town of Niskayuna, 732 votes for the office of sheriff, and that Gershom Van Voast, the relator, received in the towns and wards of the county, exclusive of the votes of the town of Niskayuna, 719 votes for the office of sheriff; and that the defendant and Gershom Van Voast, each received more votes than any other candidates for the office of sheriff at the election. That the last mentioned

certificate, after detailing the votes for the respective candidates for the offices of assemblyman, clerk, sheriff and coroners, in each town and ward of the county, except the town of Niskayuna, concludes, so far as relates to the office of sheriff, in the following words: "And do certify, determine and declare, conformably to the statements or certificates, made and delivered by the inspectors of elections of the several wards and towns in the said county, that Harmanus A. Van Slyck, by the greatest number of votes in the said county, was duly elected sheriff of the said county. In testimony whereof we, the chairman and secretary of the said board of canvassers, have hereunto set our hands, this thirteenth day of November, in the year one thousand eight hundred and twenty-two." That the last mentioned certificate is entered by the county clerk at full length, in a book by him provided for that purpose, and kept in his office; and further, that a true copy thereof, subscribed by the chairman and secretary, was delivered to Van Slyck, and another copy thereof published in the newspaper printed in the county. That in the town of Niskayuna, the defendant and Van Voast each obtained more votes than any other person for the office of sheriff; and that the defendant obtained for the office 26 votes only, and Van Voast 49 votes, which was duly certified in the certificate so signed by the inspectors of the election, and delivered to Tymesen, and by him delivered to the county clerk as before mentioned. That the canvassers did reject, and refuse to canvass and estimate the votes given in the town of Niskayuna, at the election, and certified and delivered to the county clerk, and that the votes given in the town of Niskayuna for Van Voast, added to the votes given for him in the several towns and wards of the county, for the office of sheriff, give him a majority of ten votes for the office of sheriff, over any other person voted for at the election. That the defendant upon receiving the copy of the certificate signed by the chairman and secretary, on the first day of January, A. D. 1823, took the oath, and gave the security prescribed by law, and entered upon the office of sheriff of the county of Schenectady; and held this office ever since; and that the defendant,

ALBANY
Feb. 1825.

The People
v.
Van Slyck.

Recorded by the county clerk, copy delivered to defendant, and published.

Number of votes given by Niskayuna

certified, delivered,

but refused by the county board.

If admitted by the board, relator would have had a majority of ten.

Defendant took oath of office, and gave security, being himself a freeholder, and has held, &c.

at the time of the election, and on the first day of January 1823, was a freeholder. But whether, &c.

*S. W. Jones,* for the plaintiffs. Unless the defendant shows a clear right, he cannot hold. The 8th section of the 4th article of the new constitution provides, "that sheriffs, &c. shall be chosen by the electors of the respective counties, once in every three years.

To make a choice of the defendant within this provision, there should be a majority of *legal* votes; whereas the verdict finds a majority the other way; and falsifies the certificate of the board of canvassers, which is indeed untrue upon its face.

The board proceeded under the notion that an appointment of a president was necessary for the town board, and that this should be certified to the county board. This was not necessary. The secretary of state was mistaken in his construction of the 10th section of the *act for regulating elections,* (sess. 46, ch. 250, s. 10.) The words are, " that one of the said inspectors, who shall actually preside at such election in each of the towns and wards of this state, to be appointed for that purpose by the major part of the inspectors who so preside, shall, on, &c. attend at the clerk's office, &c." In the 9th section or any previous sections, there is no allusion to a presiding inspector; and it is plain from the several provisions in relation to the proceedings of the town board, that all and each of them are to be considered and treated as presidents within the meaning of the 10th section. Either of them may be appointed after the poll has closed; and no particular form of appointment is necessary. The secretary directs, in his note, that the appointment should be made before the opening of the poll. Suppose the one then appointed should be sick, die, or otherwise incapable of attending, must the votes be lost?

[WOODWORTH, J. I think there is nothing in the act that requires this proceeding.]

There are several cases in which certificates are made necessary by the town board, but a president, as such, is not

once mentioned. The inspectors are treated as having the same equal authority throughout, and in every respect.

[The Court told Mr. Jones that he need not pursue this point any further for the present; but they would hear the other side upon it.]

*Jones,* then cited the following authorities to show that an information in nature of a *quo warranto* was the proper remedy in this case : *The King* v. *Godwin,* (Dougl. 398,) *Rex* v. *Vice-Chancellor of Cambridge,* (3 Burr. 1647,) *The People* v. *Sweeting,* (2 John. Rep. 184,) *The People* v. *The Mayor, &c. of New York,* (3 John. Cas. 79,) 1 R. L. 107. The granting of a mandamus and an information in nature of a *quo warranto,* he said, depend much upon the same principles ; the one being to admit an officer improperly excluded ; the other to oust one who has usurped an office illegally, in order to make way for the rightful candidate. (2 Esp. Dig. 343, Gould's ed. 2 Hawk. P. C. ch. 26, s. 9.)

*A. C. Paige,* and *M. T. Reynolds,* for the defendant. If the canvass were an original proceeding in this Court, there might be no difficulty in saying that the defendant should not hold his place as sheriff; but there is an insuperable impediment to their interference at this stage, and in this manner. The certificate of determination of the board of canvassers is conclusive evidence of the legal election of the defendant. It can neither be impeached nor contradicted. The only guard against misconduct is provided by the 19th section of the act. If the canvassers wilfully violate their oath, they are subject to the penalty of 500 dollars. This Court might, for the reason relied on in this case, review every canvass of an election, not excepting that of governor, lieut. governor, &c. by the state canvassers. Upon the same ground, an information would lie against a member of either house of the legislature ; for if this Court have jurisdiction, it can be taken away only by express provision. When organized pursuant to the 10th section, a majority of the county board are, by the same section, to *determine, &c. upon the person or persons duly*

ALBANY,
Feb. 1825.

The People
v.
Van Slyck.

*elected, &c. as sheriff, &c.* The authority here is judicial; and it is plain, from the whole act on this subject, the legis: lature intended that the determination should be as far binding and conclusive as a judgment in a court of justice.

Very great inconveniences will result from a contrary construction. Suppose the defendant to be ousted; a new sheriff cannot be immediately chosen; the board cannot be convened; they are *functus officio:* their powers are limited.. As a body, they must be made up of the town boards, which are continually changing; and, if otherwise, they can do no act after the Tuesday, or some adjourned day next succeeding the election. They cannot again convene. No subsequent board can perform their duties. No process can be issued to restore Van Voast; and the county must for a time remain without a sheriff. The coroners cannot take the county. Their powers are inadequate, being principally judicial; seldom ministerial. (5 Com. Dig. *Officer,* (G. 5 to 13.) 1 Bl. Com. 348–9. 1 R. L. 420, 1, s. 5.) In his ministerial capacity he acts strictly as a substitute for the sheriff in the case of his death, partiality, &c. What, in the mean time, is to become of the jail and the prisoners? Is the door to be thrown open to them? If the Court sees that such a consequence must follow, they will not interfere. It is a maxim that if the right of an individual conflict with the public safety, the former must yield.

By the 14th section of the act regulating elections, the Judges of this Court are, upon certain events, to act as state canvassers; and the powers of state and county canvassers are conferred in nearly the same terms. Would you interfere and grant an information upon a canvass of two of your own body? You must do it upon the principle relied on here. The legislature, obviously, never intended that this Court should exercise the power of review. The case is one of the first impression. Not one case of an information in nature of a *quo warranto* to try a right to the office of sheriff can be produced. There is but one instance in the books of such a proceeding against an elective public officer, and that was a supervisor,(*a*) where it was refused on the ground that the term of office had nearly expired. Admitting, however, that it will lie in that case, it does not

*(a) The People v. Sweeting,* 2 John. Rep. 184.

follow that it will lie against a sheriff. There is no board, as in this case, vested with judicial powers. The Justices of the town are to preside, with authority to say who shall vote, but not who is elected. The canvass is a ministerial act. (2 R. L. 127, s. 2, 3.) The case of *Rex* v. *The Vice-Chancellor of Cambridge*, cited from Burrow, 1647, was a proceeding by mandamus. But admitting the principle to be the same, it will be found, on examining that case, that the power of the canvassers was not judicial. The statute (1 R. L. 418, 19, s. 1) requires that the county should be assigned to the new sheriff. This is done. Suppose the defendant to be ousted of his office, to whom shall he assign? The statute requires that he should assign to his *successor*. Here he has none. It requires that the assignment should be by the sheriff. Being ousted of his office, no one is left to perform that duty. The Court will look to the interests of the public. The King's Bench have denied a *certiorari* to remove an assessment of the land tax. (*Rex* v. *King et al.* 2 T. R. 234.) So of a poor rate, on the ground of general inconvenience. (2 Str. 932, 975.) And they will act upon the same principle in this case. The defendant has prisoners in custody, whom he cannot hold: perhaps both himself and bail will be left without accountability to creditors. At any rate, he is regularly in ; and the hazard and loss of an ouster should not be visited upon his head, who is found to be in regular possession of the office, by the act of a board of canvassers.

Suppose an inspector had not attended from the town of Niskayuna, would the Court interfere, because the constitution requires a majority? Where is the Court to stop? Will they descend to the towns and look to their proceedings? Because an improper vote may have been received, will they examine and deduct it? Is this practicable? Beside, the ceremony of a canvass is indeed an idle one, if liable to be thus overturned. It has no binding force, and might as well have been omitted altogether by the act.

If this Court have jurisdiction to review the determination of the board of canvassers, their reviewing power can only be exercised through the medium of a certiorari.

and until reversed in this form, it remains valid and conclusive, and cannot be questioned by an information in nature of a *quo warranto*. A certiorari is necessary to reverse an improper appointment of a constable by two Justices. (*Wood* v. *Peake*, 8 John. Rep. 69.) The reason is, because the 2 R. L. 127, s. 5, conferring this power of appointment, creates a judicial authority, from the exercise of which a certiorari lies. (*Wilde* v. *Washburn*, 16 John. Rep. 49.) And the power conveyed by the statute in question is as plainly so as that given by the earlier statute in relation to the appointment of a constable. For the cases in which a certiorari will, in general, lie, and is necessary, the Court are referred to *Smith* v. *Lewis*, (3 John. Rep. 168-9, per Kent, Ch. J.) *Lawton* v. *The Comrs. of H. W. of Cambridge*, (2 Caines' Rep. 179,) *Learned* v. *Duval*, (3 John. Cas. 141,) *The People* v. *Runkel*, (6 John. Rep. 334,) *Rex* v. *Inhabitants of ―― in Glammorganshire*, (1 Ld. Raym. 580,) *Cross* v. *Smith*, (1 Salk. 146,) 1 Bac. Abr. *Certiorari*, (B), *Rex* v. *The Inhabitants of Great Marlow*, (2 East, 244.) The certificate of determination was a record, the history of a judicial decision, unimpeachable for defect or illegality; and no averment is admissible against it. (1 Chit. Pl. 353-4, 480-1. 1 Phil. Ev. 218, 219, ed. 1820, and the cases there cited. *M'Lean* v. *Hugarin*, 13 John. Rep. 184.) The writ of certiorari is the only known and acknowledged process to reverse the judicial decision of an inferior tribunal. A *quo warranto* is inapplicable, except when the power to be reviewed is ministerial.

But the board of canvassers decided correctly in refusing the inspector from Niskayuna his seat; and in refusing to canvass the votes from that town. The attending inspector should have been appointed on the first day of the election; and that appointment should have been made in writing and signed by a majority of the inspectors. The forms of instruments and proceeding, promulgated by the secretary of state, were sanctioned by the statute, (sess. 45, ch. 25, s. 30,) by which it was made his duty to furnish them. There should be a written appointment in the hands of the

attending inspector, to inform the board of his authority. The act of appointment should be written ; and, at any rate, made out during, or immediately after the election, not at any distance of time. These successive certificates were a mere recital of what was previously done.

An information in the nature of a *quo warranto* against a sheriff cannot be brought on the relation of an individual. Van Voast has no interest in the question, because this Court have no power to restore him ; and where an individual has no interest, he cannot be received as relator. (*Rex* v. *Williams*, 1 Burr. 402, 407. 3 Bl. Com. 262, 263, 264, note 1. *Rex* v. *Wallis*, 5 T. R. 375. *Rex* v. *Marsden*, 3 Burr. 1812, 1816, 1817. *Rex* v. *Hall*, 1 Barnwell & Creswell, 237. *Commonwealth* v. *The Un. Fire and Mar. Ins. Co. in Newburyport*, 5 Mass. Rep. 230.) The proceeding should be in the name of the People, without a relator.

The defendant was bound to take the office or be indicted and punished. (*Rex* v. *Wallis*, 5 T. R. 375, 381, per Buller, J. 5 Jac. L. Dict. 377, 8, ed. 1811, tit. *Quo Warranto*. 1 Bl. Com. 341. 2 Chit. C. L. 267, note (*x*). *The Attorney General* v. *Read*, 2 Mod. 300, arg. for the plaintiff. 6 Com. Dig. *Viscount*, (A. 2.) And there is a difference made in several of the cases just cited between one compelled to take a burthensome office, and one claiming and coming in as a volunteer. The defendant was made sheriff by the act of others.

If judgment be rendered against the defendant, the fine should be mere nominal. The information in nature of a *quo warranto* is for the purpose of trying a civil right ; and the treatment of it as a criminal proceeding is formal merely. (*The People* v. *Utica Ins. Co.* per Spencer J. 15 John. Rep. 387. 3 Bac. Ab. *Informations*, (A), p. 636, ed. 1813. *Rex* v. *Shepherd*, 4 T. R. 385. 3 Bl. Com. 262, 264, note (1).) This is the first proceeding of the kind against a sheriff. The town certificate of appointment was signed by two only of the inspectors, one of whom was the carrier of the votes ; and the supplemental certificates were entirely unavailing. The secretary's directions were taken as the guide ; and all proceeded in good faith. The rea-

sons fully appear for every step that was taken. The fine goes to the people, and is no benefit to the relator. Under these circumstances, there is nothing to take the case out of the general rule, that the fine should be nominal only.

*A. Van Vechten,* in reply. The question is, whether the defendant was *elected,* or *canvassed* into office. If the lat-ter, he is not sheriff. It is admitted that the election was regular. The work was well done, so far as that was con-cerned. We deny that the act of the county board was judicial. It was merely ministerial. They are required to cast up the votes as returned ; and any one who under-stands arithmetic can do this. They have power to do nothing more. The addition gives the result. They are not to say who are or who are not competent voters ; or whether the votes were to be received and counted ; but merely to fix the majority from the return made ; and de-clare the result, upon the certificate of the town inspectors, who are required to certify the votes at full length. Is this a judicial act ? Then every schoolmaster in the state be-comes a judge, if he happens to be chosen an inspector. Some degree of judgment must be exercised, to be sure ; but not that sort of judicial discretion, we trust, which is to control the constitution. *Rex* v. *Vice-Chancellor of Cambridge,* (3 Burr. 1647,) is decisive that the *election,* not the decision of the canvassers, confers the right.

The votes are to be certified by the town inspectors, two copies made ; one to be deposited in the town clerk's office before the canvass commences ; and another to be delivered to the county clerk by the inspector appointed to attend the county board ; this also before the canvass commences. The mere possession of this copy by the inspector is, at least, *prima facie* evidence of his appointment. No new officer is to be elected. The inspectors of the town, are all and each of them presidents ; and the right to deliver the votes and act as a member of the county board is inci-dent to the office of inspector. Tymesen had a statement of votes duly canvassed. This informed the board of all it was requisite they should know. If there was fraud, or any thing surreptitious on the part of the inspector, it then lay with the board to show it.

The secretary could impose no form not required by the election law. The member of the county board is to be appointed by his fellow inspectors. This is all which the act requires. No writing is necessary. No particular time is required; and are we gravely to be told, that the power given to the secretary, to prescribe the forms of proceeding, enables him to do away or neutralize the act? The secretary thought it a good thing to have a president; and it might be well enough; but the inspectors have indulged in a bolder fancy, and have made the omission avoid all the proceedings.

I have said a certificate is to be filed in the town clerk's office. Is not this a judicial act as well as that of the county canvassers? If so, here would be record against record, an estoppel by which the county board should have been governed. This alone would answer the notion of conclusiveness. Because the Court examine the county canvass, it is a *non sequitur* that they may go back to the town poll. Every thing there has been regularly done. The maxim of law is, that there is no wrong without a remedy. The right to interfere with wrongful elections by *mandamus* or *quo warranto* existed at common law; and is recognized and regulated by statute, (1 R. L. 107.) The former is to compel admission when the office is vacant; the latter to oust when it is improperly filled. The statute extends to any office or franchise in the state; being much broader than the English. An information has repeatedly been allowed in relation to public elective offices. (*The People* v. *The Mayor, &c. of New York,* 3 John. Cas. 79. *The People* v. *Sweeting,* 2 John. Rep. 184.) The last case was that of a supervisor; and it was not questioned that the information would have lain, had not the term of office nearly elapsed before it was applied for. Yet no substantial distinction exists between the powers of the inspectors at town meeting, in reference to the supervisor, and those of the county board as to the sheriff. It is merely counting and estimating the votes in either case.

It is not necessary to reconvene the county board in order to restore Van Voast. The verdict of the jury, and the judgment of this Court, will answer every requisite purpose.

This Court have nothing to do with the consequences. If the defendant be an usurper, he must be ousted. The Court have no dispensing power; and if the facts found warrant it, they are in duty bound to pronounce judgment of ouster. It is asked, how do you get Van Voast in? It might as well be asked how you get the defendant out? If the Court have the means of executing their judgment by the proper officer, then there is no difficulty in either. All Van Voast has to do on ouster of the defendant, is to give security, and take the oath of office. The custody of the county devolves, in the mean time, to the jailer *de facto*, who must give over the jail to the sheriff *de jure*. Gentlemen need be under no concern as to the *modus operandi*. We will see to it; and endeavor to be sufficiently advised of the manner in which our rights are to be enforced and maintained.

Van Voast was the proper relator. In the view we have taken, he has the highest interest, and is receivable upon gentlemen's own principles. He has the right, and is the only one who would come in and assume the responsibility for costs.

A certiorari is inapplicable. It would be no remedy. We are necessarily here by information in order to show the falsity of the decision. A certiorari would presuppose the truth of the record. We aver its falsity. To whom can a certiorari issue? Gentlemen say the board is dissolved; and it cannot go to them. On *quo warranto* the facts are tried by a jury, the Court give judgment of ouster; the rightful claimant comes in; and the Court will either give judgment to this effect, or grant a mandamus to the proper authority, compelling them to receive him.

It is, perhaps, difficult to determine, whether an information lies to try the title of the Governor and state officers. The Governor is the representative of the state; and an appeal from the state canvassers may not exist. It is a case, perhaps, to which neither the common or statute law extends. But it by no means follows, that the Court have not power in this instance. Because a case may be put a little puzzling, it does not deprive the Court of jurisdiction. The constitution gives the right to congress, senate and assembly to

determine all questions upon the election of their member; and impliedly excludes the jurisdiction of the Court in those cases.

*Curia,* per Woodworth, J. This is an information in nature of a *quo warranto,* filed against the defendant, who, as is alleged, intruded into, and unlawfully holds the office of sheriff of the county of Schenectady.

The remedy by information is adapted to this case. The statute is comprehensive in its terms. It extends to all persons who shall usurp, intrude into, or unlawfully hold and execute any office or franchise within this state. The jurisdiction of the Court cannot well be doubted, when the question relates to a public office. The decision of officers acting ministerially is sought to be reviewed. In *The People* v. *The Mayor of New York,* (3 John. Cas. 79,) and *The same* v. *Sweeting,* (2 John. Rep. 184,) the Court entertained jurisdiction; in one case where the relator claimed to have been elected to the office of alderman; in the other, to that of supervisor; and considered an information as the proper remedy to try the rights of the parties.

It was contended on the argument, that the decision of the board of canvassers was conclusive, until reversed; and could only be reviewed by certiorari. This objection cannot prevail. The duties of the canvassers are ministerial. They are required by the act to attend at the clerk's office, and calculate and ascertain the whole number of votes given at any election; and certify the same to be a true canvass. This is not a judicial act, but merely ministerial. They have no power to controvert the votes of the electors. If they deviate from the directions of the statute, and certify in favor of a sheriff not duly elected, he is liable to be ousted by information. The trial is had upon the right of the party holding the office. The certificate is not conclusive. The Court will decide upon an examination of all the facts.

The question then is, have the canvassers complied with the duties enjoined on them by law? I am clearly of opinion they have not.

A certificate of the election in Niskayuna was signed by

all the inspectors, and one of their number appointed to deliver it to the clerk of the county. This was done within the time limited by law. When the board met to calculate the votes, the inspector from Niskayuna was excluded, on the ground that he did not produce written evidence of his appointment. The statute declares that one of the inspectors of election, who shall actually preside at such election, to be appointed by a major part of the inspectors who shall so preside, shall, in person, deliver to the clerk a copy of the statement of votes. It is then made the duty of the inspectors, who attend at the clerk's office, to ascertain the whole number of votes given for the respective candidates at the election.

The 10th section of the act does not require that one of the inspectors be appointed to preside at the election. All the inspectors attending equally preside, and have equal powers. The meaning of the act is, that some one of the inspectors, who have attended the election, shall be appointed to deliver the certificate, and attend at the clerk's office of the county. It is not necessary to make this appointment until the votes of the town are canvassed.

Although an appointment by writing is to be preferred, it is not indispensible. The statute is silent as to a written appointment. If an objection is taken when an inspector presents himself at the board of canvassers, the evidence of his appointment may be either by writing or parol. If the statement of the votes of the town are delivered to the clerk by an inspector, and the fact of his being an inspector is not questioned by the canvassers, he ought not to be excluded ; for the delivery of the statement, and attendance to perform the duty of a canvasser, is *prima facie* evidence of an appointment for that purpose. The canvassers, therefore, erred in excluding the inspector from Niskayuna on his first application.

But if this were not sufficient, the certificate produced, before the hour of 4 o'clock on the 12th of November, was evidence that the person producing it had been regularly appointed. The act gives the power of appointment to the major part of the inspectors who shall preside. The per-

son appointed is not excluded from participation ; and consequently he may constitute one of the majority who confer on him the appointment. A second certificate signed by all the inspectors was produced the next day, before the canvass was finished. The inspectors from Niskayuna attended personally ; and offered to make oath. The board then decided not to receive any evidence ; because not offered previous to 4 o'clock P. M. of the day preceding. The votes of Niskayuna were not calculated. Excluding that town, the defendant had a majority of votes, and was declared duly elected. If the votes of Niskayuna had been canvassed, the relator would have been found to be elected.

The several decisions of the board of canvassers are manifestly erroneous ; and call for the interposition of this Court. The defendant was not duly elected sheriff; but unlawfully holds that office. It is the opinion of the Court that judgment of ouster be entered ; and that the relator recover his costs of prosecution.