## THE STATE EX REL. THOMPSON v. THE CIRCUIT JUDGE OF MOBILE.

1. Upon a contested election for the office of Clerk of the County Court of
Mobile, the Circuit Judge certified the result of a recount of all the votes
was, that the relator had 732 votes, and the next highest candidate 730
votes, but therefore certified the election to be void, according to the she-
riff's certificate : Held—

First—That the action of the Circuit Judge under the statute, is that of
a supervisor of the election, and that as such, he has no power to declare
an election void, unless the manner of conducting it is illegal—that a mis-
take by the managers in ascertaining the result, will not vitiate the elec-

The State ex rel Thompson v. The Circuit Judge of Mobile.

tion, and the Judge should have certified, that the person having the highest number of legal votes was elected.

Second—That when an election is contested, it would be improper for the Judge of the County Court to admit the Clerk, without the production of a commission from the executive, or something equivalent to it, in the absence of a judicial decision by a competent court.

2. When duties are imposed on the Circuit Judge as an officer, another Circuit Judge has no power to issue a mandamus.

3. A mandamus from the Supreme Court is the proper remedy when a Circuit Judge in his capacity of supervisor of an election refuses to give the proper certificate to the person shown to be elected. And this is so, although the office may be full, or a new election ordered, in consequence of a certificate improperly given.

MOTION by the relator, for a mandamus to the Circuit Judge of Mobile, to grant the relator a certificate of election to the office of Clerk of the County Court of Mobile county. The petition sets out, that at the last general election an election was held in that county, according to law, for Clerk of the County Court. That at such election, himself and four others were candidates. That from the returns made from all the precincts to the managers at the court house, the result was declared that Edward Rust had received 632 votes, the relator 630 votes, and the other three each a lesser number. That said Rust was then declared to have the largest number of votes, and the sheriff made out a certificate declaring him duly elected, the delivery of which was prevented by the proceedings afterwards stated. The petition then sets out, that notices that the election would be contested were given to Rust, and to the sheriff and managers. That notice of the ground of contest was given to Rust—which notices, &c. are set out at large. Upon this the matter was examined before the Judge of the Circuit Court, on the 20th day of September, 1845, when, upon counting the votes anew, it appeared the relator had received 632, and said Rust 630. That on this being ascertained, the Judge made his certificate in these terms, after stating the case, &c. :

"Upon a recount of the votes contained in all the ballot boxes returned, there being a return of the boxes from every precinct in the county, but Sol. Anderson's precinct, and adding thereto the proven official returns from that precinct, it being shown that the ballots given at the

same had been burnt; the following result was presented, viz: Edward Rust had 730 votes, · D. Thompson had 732 votes. I therefore certify, as required by the statute, according to my construction of the same, that the said election was illegally conducted, and the election according to the sheriff's certificate is void. Given under," &c. &c.

The Circuit Judge refused to give the relator a certificate that he was elected. The petition also sets out, that from the not having the necessary evidence of his election, he has been refused admission to the office. He therefore prays a *mandamus*, &c.

At the same time was argued, an appeal from the judgment of the Circuit Court of Mobile county, refusing a *mandamus*, prayed at the same relation, on the same facts, to the Judge of the County Court, to compel him to admit the relator to give bond and take the oaths of office as clerk.

J. A. CAMPBELL, for the relator.

G. N. STEWART and S. G. FISHER, for the opposing candidate.

GOLDTHWAITE, J.—1. We have heretofore had occasion to consider the nature of the powers conferred on the Circuit Court Judges, by the act prescribing the manner by which elections for clerks and sheriffs shall be contested. [Womack v. Holloway, 2 Ala. Rep. 17.] We there held, the action of the Circuit Judge was not of a judicial character, but extending to the supervision of the election, so far as to advise the executive whether the election was legal, or illegal; and, if legal, also to inform the executive which person was elected, in order that a commission to him might be issued; and if illegal, that a new election might be ordered. The construction then given to the act, indicates that the action of the Circuit Judge is simply ministerial. It would therefore seem to be the subject of revision whenever operating on the rights of any individual; and such is our opinion.

It is certainly true, the right to exercise office depends upon the validity of the election, but the mode by which the officer is made known to the people at large, and the several

departments of government, is by the commission under the seal of the State. [Const. Art. IV, § 13.] Previous to the enactment of the statute we are considering, the certificate or return of the officers conducting the election, furnished the medium of information to the executive of the person elected, and was the evidence upon which he was let into possession of the office and commissioned. The experience of years ascertained, that it sometimes happened, that persons were returned as elected, when in point of right, others were entitled to the offices. The common law remedy of *assize of office* had never obtained in the State, and the more modern remedy of *quo warranto* was too tardy to procure the speedy removal of the intruder, as well as inefficient to prevent him from entering on the duties of the usurped office. It was in view of these mischiefs this statute was enacted, and, as shown in the case cited, its effect is to make the Circuit Judge a supervisor of the election, for the purpose, when the election is contested, of informing the executive whether a commission ought to issue, and if so, to whom. Although the action of the Circuit judge cannot be determinate of the question of right, for the reason that no one can be deprived of his franchise except by due course of law, yet it is entirely evident the necessity for a judicial inquiry will be greatly diminished by a cautious scrutiny of the votes, and manner of conducting the election. It was thought proper in 1840, to confide this responsible duty with the Judge of the Circuit Court, and he is " required to hear and determine whether the election has been legally or illegally conducted ; and if, in his opinion, such election has been lawfully conducted, he shall certify the fact to the Governor, who shall thereupon commission the person in whose favor the certificate appears ; and should the judge determine the election to be void, upon a full hearing of all the facts and circumstances, and certify the same to the Governor, the Governor thereupon shall order a new election." It seems quite clear to us, that the legislature did not intend by this, to invest the individual Judge or even the appellate courts, with the power to declare an election void, unless the manner of conducting it was so illegal or fraudulent as to afford no just presumption that the will of the people had been fairly ascertained. In our judg-

ment it is equally so, that it does not confer the power to de-clare the election void, when the managers, by mistake or otherwise, arrive at an incorrect result. Even if the result, as announced by the managers, is caused by the admission of illegal votes, there would seem to be no sufficient reason why the suffrages of the legal voters should be disregarded. It is evident, when the whole statute is considered in connection with the pre-existing law, that the power is given, not merely to examine the returns from the different precincts, and ascertain the true result, according to the votes cast; but also to exclude all votes given by illegal voters, and to pronounce the result of the election after their exclusion.

It is evident therefore, that the Circuit Judge was not correct, when he came to the conclusion, in the present case, that the election had been illegally conducted, because the party returned as elected, had received two votes less in number than the relator. The result of the election was merely mistaken, and thus announced and certified by the sheriff. Nor did the legal consequence of invalidity result because the sheriff's certificate was given to one having the lesser number of votes. In our judgment, the Circuit Judge, from the facts set out in his certificate, should have certified the relator is the person elected. If, upon the scrutiny of the votes, enough illegal were shown to change the result, or if the election was conducted under circumstances which render it illegal, his certificate, in conformity with the statute, should so have stated. If an examination into these matters was asked and refused, it would be subject for consideration by itself.

2. Having come to the result, that the certificate of the Circuit Judge was made under a misconception of the law, it remains to be considered whether either, and if so which, of the relator's motions can prevail.

The appeal from the decision of the Circuit Court upon the motion for a mandamus to the County Judge, may be disposed of quite briefly. It is certain the relator had neither the certificate of the sheriff showing his election, the commission under the seal of the State, or any thing equivalent thereto, to produce as evidence that he was entitled to be admitted to the office. Without something of this kind, we do

The State ex rel Thompson v. The Circuit Judge of Mobile.

not well see how the County Judge could recognize his claim. In Hill v. The State, 1 Ala. Rep. 559, we say the executive is the department of the government through which its officers are made known to each other, and to the people, in the absence of a judicial investigation. This is conclusive against his admission by the County Judge, as that officer is not invested with any power to inquire into, or to ascertain the right to a disputed office, and must be ignorant of it, until the executive commission, or something equivalent to that, is produced.

3. With reference to the motion for a mandamus against the Circuit Court, it may be observed, that the statute imposes the duty, not upon the individual, but upon the officer, and therefore, if this is the proper remedy, it is to be pursued here, inasmuch as one Circuit Judge has not the power, by any statute, to issue a mandamus to another.

4. We have previously said, the action of the Circuit Judge under the statute, is, that of a supervisor of election. In that capacity he stands in a similar relation as the managers at the court house; and, except that he has the power to scrutinize the votes given at all the precincts, as well as the qualifications of those who have voted, is controlled by the same legal rules. In all respects he may be considered *pro hac vice*, as the returning officer, for it is clear the functions of the managers and sheriff, in this particular, are at an end, as soon as the election is contested. The votes are directed to be sealed up and returned to him, to be retained until his decision; and the certificate of the returned candidate is also placed in his charge. [Dig. 184, § 13.] There is a necessity that the county offices shall at all times be filled, and the objection that the revision of incorrect action by the returning officer cannot in general be so speedy as to prevent the improper person from obtaining the commission consequent upon the return, applies with equal force, whether the return is made by the sheriff or by the Circuit Judge. In either case, if the office was filled, it might require a *quo warranto* to remove the intruder; although it admits of question whether, under such circumstances, the judgment upon the information, should be confined to the mere seizure of the franchise. However this may be, and we took occasion to

notice some of these difficulties when we decided the case of Hill v. The State, 1 Ala. Rep. N. S. 559, yet, it is conceived, these matters do not affect the question of right, if, in point of law, the relator is entitled to a certificate according to the facts which are made to appear. We apprehend this is the right of any one who can make it appear, that he has the greatesf number of votes cast by legal voters at an election in which the will of the people is legally pronounced. It would be a mockery of our institutions to determine that the law had no means to enforce the execution of that will. Whenever the title to office is clearly ascertained, there is no serious impediment in obtaining its possession. In Ex parte Strong, 20 Pick. 484, the whole is examined with relation to the right of the party to have the certificate necessary for admission, and although the office itself had then been filled by a new election, produced by the decision of the managers that no one had been elected at that previously held, yet this was held to be no reason to deny the mandamus. In Rex v. Mayor of York, 4 Term, 699; 5 Ib. 66, after a certificate had been given by the judges of the election, a *mandamus* was granted on the allegation of the relator that he, in point of fact had received a majority of the legal votes, and made absolute, after quashing an insufficient return. These cases are full to the point, that whenever the right of an individual depends upon an election, the certificate of the returning officer must be in accordance with the facts, and that the legal conclusion to be drawn, is a matter of law, resulting from these facts, and cannot be controlled by the opinion of the officer upon them. They are also conclusive that a *mandamns* is the proper remedy, and to this effect also is Dew v. Judges of Sweet Springs District Court, 3 H. & M. 1, where one clerk having the actual right, was, by *mandamus* reinvested with his office, from which he had previously been ousted by the admission of another, whose title was in this manner ascertained to be invalid.

Without further citation of authorities, we are satisfied the relator is entitled to a *mandamus ni si* to the Circuit Judge to grant him a certificate of election.

*Mandamus ni si* awarded.