STATE OF MISSOURI *ex rel.* JOHN B. BELL, Petitioner, *v.* SAMUEL HARRISON, Respondent.

*Mandamus—Elections.*—After the clerk of the county court has, in pursuance of the statute, called to his assistance two justices of the peace or of the county court, and has publicly examined and cast up the vote of the county, nothing remains for him to do but the ministerial duty of issuing certificates to the candidates elected. The legality or illegality of the votes is not submitted to his judgment; the determination of that question belongs to other tribunals. Any party aggrieved by the issuing of the certificate must pursue his remedy in the courts.

*Mandamus to Clerk of Washington County Court.*

*Van Allen,* for petitioner.

The petitioner shows that he filed the oath of loyalty required of all candidates—§ 8, art. 2, Const. Mo., R. C. 26.

The petition further shows that he was candidate for the office of circuit clerk of Washington county, Mo., at the general election held November 6, 1866; and that on the 8th day of November, 1866, Samuel Harrison, clerk of the County Court, with the assistance of Jonas Anthony and Michael Maloney, two justices of the peace of said county, examined and cast up the votes given to each candidate, as required to do by § 25, ch. 2, tit. 2, R. C. 1865, p. 63.

The petitition further shows that the said clerk and his assistants cast up a large majority of votes in favor of the petitioner, nevertheless he refuses to give to the petitioner a certificate of election as required to do by § 25 aforesaid.

By § 52, ch. 2, tit. 2, R. C. 1865, p. 66, it is provided that no election of any county officer shall be contested unless legal notice in writing be given, &c., to the opposite party

within twenty days after the votes shall be officially counted. See also Castello v. St. Louis Co. Ct., 28 Mo. 259.

The petition in this case shows that the votes were officially counted by the clerk on the 8th day of November, 1866. With that count this petitioner is entirely satisfied, and has no desire to contest it.

As soon as the clerk with his assistants had officially counted the votes on the 8th day of November, he dismissed his assistants, the candidates and spectators left, and there remained but one duty for the clerk to perform, and that was to deliver to your petitioner, in accordance with such official count, a certificate of his election as circuit clerk of Washington county, Missouri. The clerk of the County Court having refused to perform that duty, your petitioner asks this court to compel him by *mandamus*.

The duty of giving a certificate of election is a simple clerical act, and this petitioner having no other remedy he is entitled to the aid of this court by its process of *mandamus*— 33 Mo. 293; 35 Mo. 198; 7 Johns. (N. Y.) 549.

The clerk having officially counted the votes on the 8th day of November, he cannot after that day change that count. To allow him to do so would, in effect, nullify the provisions of § 26, ch. 2, tit. 2, R. C. 1865, by which he is required to compare the returns publicly, &c., giving proclamation at the court-house door—§ 26, ch. 2, tit. 2, R. C. 63.

If the clerk may change the count which he made publicly on the 8th, in the presence of your petitioner and others, he can then, at any time privately, deprive a candidate, legally qualified and elected, of his right to appeal, as a candidate is not supposed to know what acts an officer performs in privacy, or his reasons therefor; and therefore, in his notice of appeal to the Circuit Court, he cannot state the grounds of error committed by the clerk of the County Court in his recount made privately and without the legal assistance which the law requires in § 25, ch. 2. tit. 2.

The granting of the certificate of election does not determine the ultimate right to the office; it is only a *prima facie*

right to qualify and hold until after the twenty days ; then, if no other candidate gives him a legal notice of appeal, his right to the office is absolute.

*Knox & Smith*, for respondent.

WAGNER, Judge, delivered the opinion of the court.

The petitioner prays a *mandamus* in this court to compel the respondent, who is county clerk of Washington county, to grant him a certificate of election as clerk of the Circuit Court of said county. He alleges in his petition that at the general election held in the county of Washington on the 6th day of November, 1866, he was a candidate for the office of circuit clerk of said county, and that within fifteen days previous to the election he subscribed and filed the oath of loyalty required by the Constitution, and that after such election, to-wit, on the 8th day of November, the respondent as county clerk of said county, with the assistance of two justices of the peace, publicly and in the presence of several citizens and candidates in the court-house, in the town of Potosi in said county, did examine and cast up the votes which had been given for the several candidates at the said preceding general election ; and that the respondent, as clerk, and his assistants, did find and cast up five hundred and sixteen votes that had been cast for and given to the petitioner for the office of clerk of the Circuit Court, and they found and cast up three hundred and twenty-seven votes which had been given for William T. Hunter for the same office ; and also found and cast up forty votes which had been given for Wm. E. McGrady for the same office; and the above were the only and all the votes given at such election for candidates for the said office of circuit clerk ; and they further found that the petitioner had received the highest number of votes given at said election for said office. The petitioner further states that on the 12th day of November he applied to the respondent, as clerk of the County Court, at his office in the court-house, for a certificate of

election, verbally, and also demanded the same in writing, but that respondent refused, and still refuses, to give the certificate.

The respondent, for answer to the alternative writ, denies that the petitioner received a majority of the registered votes cast at the said election held on the 6th day of November, 1866; states that there was no legal registration of the voters in Union and Concord townships, in said county of Washington, and that in the said townships, in violation and disregard of law, two hundred and fifty-two ballots were given for the petitioner, and that the votes so cast were not cast by registered voters. He further states that there was no legal registration of voters in either of said townships, and that before said election the pretended registration of voters in said townships was rejected by the supervisors for the reason that the same had not been made in conformity to law. He also alleges that the poll books returned to his office by the judges of election showed that the registration law had been disregarded by the judges, and that the votes cast were illegal. He then avers that the votes of said townships should have been rejected for the reasons above stated, and would have been rejected but for the threats and clamor of the friends of the petitioner, by which he was induced to cast up the votes of said townships.

There is no traverse made to the answer, and it must therefore be taken to be true.

The law requires that within eight days after the close of each election, the clerk of each County Court shall take to his assistance two justices of the peace of his county, or two justices of the County Court, and examine and cast up the votes given to each candidate, and give to those having the highest number of votes a certificate of election. And the clerks in comparing the returns from the several townships must do it publicly in the court-house of their counties, first giving notice of the same by public proclamation at the court-house door—R. C. 1865, p. 63, §§ 25, 26. It has been con-

sidered heretofore as settled that the clerk in comparing and casting up the votes certified to him acts in merely a ministerial capacity, and that the legality or illegality of the votes is not submitted to his judgment, the determination of that question properly belonging to another tribunal.

By the registration law, now in force in this State, no person is legally qualified to vote until he has been duly registered in pursuance of its provisions, and all votes cast in violation or disregard of the law are totally illegal and of no effect.

Whether the clerk would have had the authority, when he proceeded publicly to examine and cast up the votes, to reject them if it had plainly appeared that the law concerning registration had been disregarded, is a question not properly before us, and we therefore express no opinion upon it. But he did, in pursuance of the statute, take to his assistance two justices of the peace of the county, and publicly examine and cast up the entire vote. After that was performed, nothing remained for him but the mere ministerial duty of issuing the certificate; and any party aggrieved must pursue his remedy by a direct contest in the courts of the country. But the respondent in his answer says that in the count and casting up, the votes of the two townships would have been rejected had it not been for the threats and clamors of the friends of the petitioner.

If a party is compelled to do an act against his will by threats and impending violence which in law would amount to duress, unquestionably the act would be a nullity, and he would not be bound thereby. But there is nothing alleged here to show that the respondent was in danger, or apprehended that he was in danger, of any of the acts which would constitute *duress per minas*.

A peremptory *mandamus* will be ordered. The other judges concur.