STATE *ex rel.* ATTORNEY-GENERAL, Petitioner, *v.* JOHN H. STEERS, Defendant.

1. *Quo warranto — Subject to general rules of pleading.*— An information in nature of a *quo warranto* is a pleading which must be answered or demurred to, and the general rules of pleading are applicable to proceedings therein.

2. *Quo warranto — Pleadings in — Allegations of, should be denied — Elections — Title to office derived from election, not commission — Sheriff of Ralls county.*— Where an information in the nature of a *quo warranto* charged that defendant was holding and exercising the office of sheriff by virtue of the election of 1868, and in consequence of a certificate wrongfully issued by the clerk of the County Court, upon which a commission issued; an answer that defendant was duly elected in 1866, and that no successor had been qualified, was bad, for duplicity, and might be construed to mean that he was holding under either election, for the reason that no person had succeeded him in office. The allegation in the petition should have been denied. A person derives his title to an office by his election, and not by his commission; and if he

holds and exercises the functions of an office without having been legally elected, it is an unlawful holding, and he may be ousted at the instance of the State, notwithstanding his commission.

3. *Elections — Officer can not hold by unlawfully detaining commission of his successor.* — Although by force of existing law an officer holds until his successor is elected and qualified, yet if, by unlawfully detaining his certificate and commission, he prevents the person legally entitled thereto from qualifying, he will not be allowed to set this up in defense, and reap a reward from his own wrong.

4. *Elections — Legality of votes determined by intention of voters — Defects in certificate supplied, how.* — In determining the legality of votes, a literal compliance with prescribed forms is not required in any case if the spirit of the law is not violated; and the governing principle in all cases is clearly to ascertain the intention of voters. If a defect exists in the certificate of election, that may be supplied at any time by the judges and clerks, whose duty it is to make the same before the vote is counted.

5. *Elections, act concerning — Duties under simply ministerial.* — Under section 25 of the act touching elections (Gen. Stat. 1865, ch. 2, p. 63), no power is given to the clerk to adjudge whether votes are legal or illegal, but the simple ministerial duty to cast up and award the certificate to the person having the highest number of votes. To determine upon the legality of votes is a judicial proceeding before a court competent to hear and adjudicate, where the parties interested can appear and present their respective claims. To allow a ministerial officer arbitrarily to reject returns at his mere caprice or pleasure is to infringe or destroy the rights of parties without notice or opportunity to be heard. The exercise of such a power is subversive of the rights of the citizen, and fatal to the elective franchise.

6. *Elections — Tribunal provided by law for determining validity of votes.* — The law has provided tribunals with ample power to hear and determine all questions pertaining to elections, and pass upon the validity of votes, where the parties interested can appear and have a fair trial upon pleadings and proof.

*Johnson*, Attorney-General, and *Geo. H. Shields*, for relator.

I. On an *ex-officio* information in the nature of a *quo warranto*, the court will look beyond the relator's certificate of election and commission, and, unless he has been legally elected, will give judgment of ouster. (The People *ex rel.* Benton v. Vail, 20 Wend. 12; The People *ex rel.* Van Vourt v. Van Slyck, 4 Cow. 297; The People *ex rel.* Yeates v. Ferguson, 8 Cow. 102; Attorney-General *ex rel.* W. H. Carpenter v. Ely, 4 Wis. 420.)

II. This irregularity can be cured by the testimony of the clerk, judges of election, or other parol evidence. (4 Wis. 420.)

III. The general rules of pleading apply to informations.

(The People v. Clark, 4 Cow. 95; 23 Wend. 193, 223; 2 Watts & Serg. 407; 4 Seld. 62; 26 Mo. 496.)

IV. The plea that respondent was elected in 1866, and entered the office under competent authority, is no defense to the allegations in this information. (The People *ex rel.* Benton v. Vail, 20 Wend. 12; The People v. Van Slyck, 4 Cow. 291; The People v. Ferguson, 8 Cow. 102; The People v. Jones, 17 Wend. 81.)

*Dryden, Lindley & Dryden,* for defendant.

WAGNER, Judge, delivered the opinion of the court.

The attorney-general, on behalf of the State, appears and files an information in the nature of a *quo warranto*, in which, among other matters, he states that at the general election held in this State on the third day of November, 1868, in the various counties, for State and county officers, one Samuel C. McCune, and defendant John H. Steers, were candidates, and the only candidates, in the county of Ralls, for the office of sheriff of said county; that McCune received a majority of all the legal votes cast for said office, in the said county, at that election, and that the judges and clerks of election in the various election districts in said county so certified to the county clerks of said county; that, notwithstanding the fact that said McCune received the majority of all the legal votes cast for said office of sheriff, the county clerk and board of county canvassers, unlawfully, wrongfully, for alleged informality and illegality, rejected and refused to count the votes, as certified by the judges and clerks of election, cast for said office in Jasper election district, in said county; that the said defendant Steers, by the said illegal and wrongful action of the county clerk in refusing to count and take into consideration the said votes and poll-books of Jasper election district, illegally obtained from the county clerk of said county his certificate of election from said clerk, and on the said certificate of election the governor of the State issued his commission to the defendant as sheriff of said county, under which commission the said defendant now holds and executes the duties of the said office of sheriff.

The information then specifies the number of votes given, showing that, upon a counting of the whole vote of Ralls county, McCune was legally elected, and that, by the act of the clerk in throwing out the vote of Jasper election district, the result was changed, and a majority left for the defendant.

A judgment of ouster is demanded against the defendant, for the reason that he is usurping and exercising the duties of an office to which he has no just or legal claim.

The defendant, in answer, sets up the plea that at the regular election, in 1866, he was a candidate for the office of sheriff in Ralls county, and was duly elected; that he received a certificate of such election from the clerk of the County Court of said county, and that thereon he was duly commissioned by the governor to serve for two years, and until his successor should be duly elected and qualified; and the defendant further alleges that, in pursuance of his said election in 1866, and by authority of the said commission, he accepted the said office of sheriff, and still holds and executes said office, no successor to the defendant in said office having been duly elected and qualified, and the defendant not having been removed for malfeasance.

Upon these pleadings the case stands in this court. The information expressly alleges that the defendant is holding and exercising the functions of the office by virtue of the election of 1868, and in consequence of a certificate wrongfully issued by the clerk of the County Court, upon which a commission was issued. There is no express denial of the averment, but there is an answer—argumentative, evasive, and negative in its character—stating that the defendant holds said office, no successor to him having ever been elected and qualified.

The information is a pleading which must be answered or demurred to, and it has been decided that the general rules of pleading are applicable to proceedings upon an information in the nature of a *quo warranto*. (People v. Clark, 4 Cow. 95; State *ex rel.* v. Bernoudy, 36 Mo. 297; State v. Messmore, 14 Wis. 115.)

The evasive answer, that no successor to the defendant had ever been qualified, is full of duplicity, and may be construed to

mean that he holds under either election, no other person having succeeded him in the office. The allegation in the information is a plain, simple one, requiring a denial, which the defendant has not seen proper to make. A person derives his title to an office by his election, and not by his commission; and if he holds and exercises the functions of an office without having been legally elected, it is unlawful holding, and he may be ousted at the instance of the State, notwithstanding his commission. (Bashford v. Barstow, 4 Wis. 567.)

In the case of The People v. Van Slyck (4 Cow. 297), it was determined that an information in the nature of a *quo warranto* would lie against one intruding into the office of sheriff in consequence of an unlawful decision of the county board of canvassers, the duties of the board being ministerial, and not judicial. It is true that by force of existing law the officer holds until his successor is elected and qualified; but if, by unlawfully detaining his certificate and commission, he prevents the person legally entitled thereto from qualifying, he will not be allowed to set this up in defense, and reap a benefit from his own wrong.

The question, then, arises, by what authority did the county clerk, acting as a mere canvassing officer, assume to determine the legality of the vote in the Jasper election district? Although the vote might have been informally certified, that would make no difference. Officers should look at substance, and not at form. A literal compliance with the prescribed forms is not required in any case if the spirit of the law is not violated; and the governing principle in all cases is to clearly ascertain the intention of the voters. If a defect existed in the certificate, that might be supplied at any time by the judges and clerks, whose duty it was to make the same before the vote was counted. The statute requires that within eight days after the close of each election the clerk of each county court shall take to his assistance two justices of the peace of his county, or two justices of the county court, and examine and cast up the votes given to each candidate, and give to those having the highest number of votes a certificate of election. (Gen. Stat. 1865, p. 63, § 25.) Here is

no discretion given—no power to pass upon and adjudge whether votes are legal or illegal—but the simple ministerial duty to cast up and award the certificate to the person having the highest number of votes. If the clerk has sufficient mathematical ability to correctly count up the returns, he is perfectly qualified for his office, for that is the only duty devolved on him by law. To determine upon the legality of votes is a judicial proceeding before a court competent to hear and adjudicate, where the parties interested can appear and present their respective claims. To allow a ministerial officer arbitrarily to reject returns at his mere caprice or pleasure is to infringe or destroy the rights of parties, without notice or opportunity to be heard — a thing which the law abhors and prohibits. Admit the power, and there will be no uniformity. One canvassing officer will reject for one thing, and another for a different matter; and no man can tell whether he is legally elected to an office until he consults the notions of a canvasser. The exercise of such a power is subversive of the rights of the citizen, and dangerous and fatal to the elective franchise. But it is enough to say that the claim is utterly unauthorized. The law has provided tribunals with ample power to hear and determine all questions pertaining to elections, and pass upon the validity of votes, where the parties interested can appear and have a fair trial upon pleadings and proof. When a ministerial officer leaves his proper sphere, and attempts to exercise judicial functions, he is exceeding the limits of the law and guilty of usurpation. In this case it would have been more decent and seemly for the clerk to have confined himself to the discharge of the duties pointed out by law, and not to have attempted the exercise of powers which were never intrusted to him.

I have examined, with a good deal of research, the authorities, and have never been able to find a single one that held otherwise than that the canvasser acted ministerially; but they are unanimous and decisive, declaring him to be a ministerial officer, and nothing else. (Mayo v. Freeland, 10 Mo. 629; State v. Harrison, 38 Mo. 540; State v. Rodman, 43 Mo. 256; *Ex parte* Heath, 3 Hill. 42; Brower v. O'Brien, 2 Ind. 423; People v. Hilliard, 29 Ill. 413; People v. Jones, 19 Ind. 357; Ballou v.

York County Commissioners, 13 Shep. 491; Thompson v. Circuit Judge, 9 Ala. 338; People v. Kilduff, 15 Ill. 492; O'Farrell v. Colby, 2 Minn. 180; People v. Van Cleve, 1 Mich. 362; People v. Van Slyck, 4 Cow. 297; Morgan v. Quackenbush, 22 Barb. 72; Dishon v. Smith, 10 Iowa, 212; People v. Cook, 14 Barb. 259; 4 Seld., S. C., 67; Hartt v. Harvey, 32 Barb. 55; Attorney-General v. Barstow, 4 Wis. 567; Attorney-General v. Eli, 4 Wis. 420; State v. Governor, 1 Dutch. 331; State v. Clerk of Passaic, *id.* 354; Marshall v. Kerns, 2 Swan, 68; People v. Pease, 27 N. Y. 45; Head's case, 25 Ill. 325.)

The record abundantly shows that the defendant has no legal right to the office which he is now holding, and judgment of ouster will therefore be entered against him, with costs. The other judges concur.

*H. B. Johnson*, Attorney-General, and *Geo. H. Shields*, for relator.

*Dryden, Lindley & Dryden*, for defendant.