OF THE

## TERRITORY OF NEW MEXICO.

[No. 312.   February 4, 1888.]   •

TERRITORY OF NEW MEXICO EX REL. CHAS. W.
LEWIS, APPELLEE, v. BOARD OF COUNTY
COMMISSIONERS, BERNALILLO COUNTY,
ETC., APPELLANTS.

ELECTIONS—MANDAMUS TO COMPEL COUNTY COMMISSIONERS TO CANVASS
RETURNS—EVIDENCE—WAIVER.—In a proceeding by mandamus to
compel the board of county commissioners of a county to canvass the
election returns of a certain precinct, where the respondents ask the
court to inspect the evidence offered with their answer, and bring into
court all the returns, certificates, poll books and ballot box, and
invoke its judgment as to the legal sufficiency to justify the action of
the board, such action on their part is a submission to the court, and
they will not be heard to insist on the right to a jury to.try the issues
of fact, even if a jury could be impaneled—a point not before the
court, and on which it does not pass.  Nor will they be heard, in
view of these facts, to object that there is no. evidence, upon the
issue of facts raised by their answer, to support the judgment of the
court below in awarding a peremptory writ.

ID.—PEREMPTORY WRIT OF MANDAMUS WILL LIE TO COMPEL PERFORM-
ANCE OF MINISTERIAL ACT, WHEN.—In such case, where it appears the
board of canvassers have failed to count votes which ought to be
counted, and where, if such votes are counted, the relator will be
elected, the court may, by peremptory writ of mandamus, direct the
board of canvassers to count such votes, and to issue to relator a cer-
tificate of election.

VOL. 5 N. M.—1                                          (1)

ID.—BALLOT BOXES, POWER OF BOARD OF CANVASSERS TO OPEN.—Where, in such case, a ballot box containing the election returns has been forwarded by the proper legal authority and placed in the proper legal custody, the returns in the box are, in legal contemplation, before the board of canvassers, constituted as such by law, and they have the power and authority to open the box, and take therefrom the returns for examination, as an incident to the power to canvass the returns, under section 1188, Compiled Laws of New Mexico.

APPEAL, from a judgment in favor of relator, awarding a peremptory writ of mandamus ordering that the returns be canvassed by defendant on the certificate delivered, from the Second Judicial District Court, Bernalillo county. Judgment affirmed.

The facts are stated in the opinion of the court.

NEILL B. FIELD for appellant.

It is made the duty of the judges and clerks of election in each precinct to make out, sign and return to the clerk of the board of county commissioners a certificate showing the total number of votes cast for each office, and the number of votes received by each candidate; these alone constitute the returns, which as a board of canvassers it is made the duty of the county commissioners to canvass, and from which they declare the result. Comp. Laws, N. M. 1884, sections 1137, 1138, 1142.

It is also made the duty of the judges of election to send a copy of the certificate so made by them to the justice of the peace for their precinct, and to give certified copies, not exceeding four, to the parties interested. Id., section 1196.

It is also provided that the copies shall be as valid as the originals for all purposes. Id., section 1197.

A heavy penalty is denounced against giving fraudulent certificates, or maliciously throwing out returns. Id., section 1190.

A court can not, by writ of mandamus, usurp the functions of a board of canvassers; it was therefore error for the court to order the respondents to reject the returns from precincts 1, 8 and 12. High's Ex. Legal Rem., section 56; Arberry v. Beavers, 6 Tex. 457; People v. Stevens, 5 Hill, 616; McCrary on Elec., sections 81, 82; People v. Head, 25 Ill. 328. See, also, State v. Steers, Brightly's Lead. Cas. on Elec. 305, 306.

It was also error for the court to proceed to dispose of the issues of fact raised by the answer without evidence and without the intervention of a jury. Comp. Laws, N. M. 1884, sections 1998, 1999, 2000.

For definition of modern writ of mandamus see High's Ex. Legal Rem., section 1.

"It is regarded in the nature of an action by the person in whose favor the writ is granted, for the enforcement of a right in cases where the law affords him no other adequate means of redress, and a judgment in a mandamus proceeding, as in the case of an ordinary action at law, is subject to review by a writ of error or appeal upon like conditions as other cases." Id., section 4; Martin v. Greenhow, 102 U. S. 672.

The courts will, in administering relief by mandamus, under such statutes as ours, be governed by the same conditions and limitations which prevail at common law. Kimball v. Union Water Co., 44 Cal. 173; High's Ex. Legal Rem. 30.

The statute of 9 Anne authorizes the plaintiff to plead to, or traverse, the return to the writ, and the issues thus found were ordinarily tried by a jury. The right to trial by jury in this territory, in an ordinary common law action, is secured both by the constitution of the United States and the bill of rights in this territory, and should have been awarded to the respondents here.

W. B. CHILDERS for appellee.

The former practice was to demur to the return, or move to quash. Under our statute the court passes on the sufficiency of the return as a matter of law. Comp. Laws, sections 1993, 1999, 2000; High on Ex. Legal Rem. [2 Ed.], sections 474-488-492-497.

The answer in this case is in itself no more than a demurrer, and raises no question of fact, and left nothing for the court to do but to pass on the questions of law. High's Ex. Legal Rem. 1, section 492; People v. Solomon, 46 Ill. 334; Beckel v. Union Town, 9 Ohio St. 599; State v. The Justices, 48 Mo. 475; Moses v. Kearney, 31 Ark. 261.

The court, no issue of fact being raised by the alternative writ and answer, passed upon the questions of law, and properly awarded the writ. No trial by jury was necessary. See Wade v. Ashenfelter, filed at the present term of the court.

It is the duty of the court in mandamus proceedings to pass upon the validity of returns, and command the respondents to perform the exact duty required of them by law, and to issue a certificate of election to the person having the highest number of votes. High on Ex. Legal Rem. [2 Ed.], sections 56, 57, and cases cited; State v. Garesche, 65 Mo. 480.

The court has the power to direct a ministerial officer to not only proceed to do his duty, but it may also indicate what his specific duty is. Id., 65 Mo. 489.

That was all the court did in this case. To have done less would have been to render such proceedings wholly nugatory. High on Ex. Legal Rem., sections 56 a and 60; Kisler v. Cameron, 39 Ind. 488.

As to the contention of appellants that the functions of the board of canvassers as to the returns are judicial, and not subject to control by mandamus, see

Bull v. Southwick, 2 N. M. 351, where this court held that "the returns showing in an intelligible manner the number of votes, it becomes the ministerial duty of the convassing board to count all such, and declare the result from such returns alone."

LONG, C. J.—The relator, Charles W. Lewis, commenced in the court below a proceeding by mandamus against the above named board of county commissioners.   Section 1994, relating to mandamus, provides as follows: "The writ shall issue on the information of the party beneficially interested."   Under this section an information was filed as the basis of the proceeding. Later an amended information was filed, and upon that issued the amended writ of mandamus.   As this writ and the answer thereto constitute the pleadings in the case, and are necessary to a proper understanding thereof, they are herein set out, and are as follows:

"ALTERNATIVE WRIT ISSUED ON AMENDED INFORMATION.

"TERRITORY OF NEW MEXICO, ⎫
  County of Bernalillo.          ⎬
                                         ⎭

"The territory of New Mexico to Marcos C. de Baca, Mariano S. Otero and Cristobal Armijo, members of the board of county commissioners of the county of Bernalillo, in said territory, and to said board of county commissioners, ex-officio the board of canvassers of said county of Bernalillo, greeting:

"Whereas, it has been suggested to us by the affidavit and information of Charles W. Lewis, that the said Marcos C. de Baca, Mariano S. Otero and Cristobal Armijo are the county commissioners of Bernalillo county, and territory of New Mexico, and as such county commissioners are ex officio the board of canvassers of the said county of Bernalillo, and as such are charged by law with the duty of canvassing the returns and certificates of the judges and clerks of the election held in the several precincts of the said county

on the Tuesday next after the first Monday of November
A. D. 1886, for the election of the several county officers,
voted for on said day, including the office of assessor of
the said county of Bernalillo, and whereas, it has further
been made to appear to us that the relator, Charles W.
Lewis, was a candidate for the office of assessor of the
said county of Bernalillo at the said election, and, as
shown by the returns and certificates of the judges
and clerks of the election held in the several precincts
of said county on said day, received the greatest num-
ber of votes cast for said office on said day, and as
shown by the certificates and returns of the said judges
and clerks of election, as well as by the ballots returned
by said judges and clerks of election, was duly elected
to said office at said election.  And whereas, it appears
from the poll books, certificates, and returns, from all
the precincts in said county, duly signed and certified
by said judges and clerks of said election for said sev-
eral precincts as required by law, except the returns
and certificates of the judges and clerks of the election
for precincts numbered one (1), two (2), eight (8), ten
(10), and twelve (12), that said relator received thir-
teen hundred and forty (1,340) votes for said office of
assessor of said county of Bernalillo, which number of
votes for said office was the greatest number of votes
shown by said certificates, returns, and poll books to
have been cast for any person for said office at said
election, it appearing that one J. M. Montoya, who
received the next greatest number of votes for said
office upon the face of said returns, certificates, and
poll books, received eleven hundred and sixty-four
(1,164) votes for said office, and no more.  And
whereas, it further appears by the information of the
said relator, that the certified copies of the returns and
certificates of the judges and clerks of said election for
said precincts numbered one (1), two (2), eight (8),
and twelve (12), that no votes were cast for any person

for said office of assessor at said election. And whereas, it further appears that the poll books used in said last mentioned precincts, on said day at said election, do not show that any votes were cast or polled for any person for said office at said election. And whereas, it further appears from the said information of the said relator, that the said relator did actually receive at said election for said office, on said day, in said precinct number one (1), twelve (12) votes; and in said precinct number two (2), ten (10) votes; and in said precinct number eight (8), seventy-one (71) votes; and in said precinct number twelve (12), one hundred and twenty-eight (128) votes; making the total number of votes by said relator at said election for said office, except the votes received by him in said precinct number ten, fifteen hundred and sixty-one, and that the said Montoya received at said election, at all the precincts of said county, including the votes actually cast for him for said office in said precincts numbers one, two, eight and twelve, and excluding those cast for him in said precinct number ten, only fifteen hundred and fifty-one votes, and no more for said office. And whereas, it further appears from the information of the said relator, that the said relator, received in said precinct number ten, at said election on said day, for said office, ninety-one (91) votes, and the said Montoya twenty-one (21) votes, and no more, and that the judges and clerks of said election for said precinct number ten, so certified and returned as required by law, which certificates and return so made by said judges and clerks of the election for said precinct were inclosed in the ballot box used by said judges and clerks at said election, together with the poll books then and there used, and the ballots then and there cast at said election; and that said ballot box, together with its said contents, was, after said election, delivered by said judges and clerks of election

to the clerk of the said board of county commissioners,
ex officio the board of canvassers, and, together with
the returns and certificates and ballot boxes from the
other precincts in said county, and hereinbefore
referred to, are under the control and in the custody of
the said board of county commissioners, ex officio
board of canvassers. And whereas, it appears that the
said relator, including the votes cast for him in said
precinct number ten, received in all the precincts of said
county for said office, sixteen hundred and fifty-two
.(1,652) votes, and the said Montoya received for said
office at said election, fifteen hundred and sev-
enty-two (1,572) votes, and no more, and that said
relator received the greatest number of votes cast for
any person for said office. And whereas, it further
appears from said information that the said board of
commissioners met in session as a board of canvassers
for said county on the 6th, 7th, and 8th days of
November, A. D. 1886, but that said board refused to
open said ballot box used in said precinct No. 10 at
said election, and take therefrom the poll books and
the certificates and returns, and canvass the vote
thereby shown to have been cast in said precinct at
said election for said office of assessor, and refused to
canvass the votes as shown by the certificates and
returns of the judges and clerks of said election for the
other precincts of said office, and to issue a certificate
of election to the relator, he being the person who,
upon the face of the returns from the several precincts
of said county, is entitled by law to receive a certificate
of election to said office of assessor. And whereas, it
appears that said board insist upon counting votes cast
in said precincts numbered one (1) and two (2),
although the returns and certificates from said precincts
do not show that any votes were cast in said precincts
at said election for said office. And whereas, it
appears from said information that the said relator is
beneficially interested herein, and that there is not a

plain, speedy, and adequate remedy in the ordinary course of law:

"Therefore, we command you that immediately after the receipt of this writ you do convene as such board of county commissioners and examine all the votes shown by the certificates and returns of the judges and clerks of the election held on said day, in the several precincts of said county, including said precinct No. 10, and for that purpose you do open the ballot box used in said precinct at said election, and now under your control, and take therefrom the poll books and returns and certificates of the judges and clerks of said election of said precinct No. 10, and that you do not count any votes for the said office of assessor, as having been cast at said election in the said precincts numbers one (1), two (2), eight (8) and twelve (12), but that you do take the votes as shown by the face of the certificates and returns of the judges and clerks of the election held on said day, and issue a certificate of election 'in accordance with the result as thereby shown, to the said relator, Charles W. Lewis, of his election to said office of assessor of the county of Bernalillo, as required by law, or that you show cause forthwith before this court, at the court-house of the county of Socorro, why you have not done so.

"Witness the honorable William H. Brinker, associate justice of the supreme court of the territory of New Mexico, and judge of the Second judicial district court thereof, and the seal of said district court, this 16th day of November, A. D. 1886.

[SEAL]                    "Lorion Miller, Clerk."

"Answer to Amended Writ.

"Territory of New Mexico, ⎫
  County of Bernalillo.        ⎬

"Before Hon. William H. Brinker, associate justice of the supreme court of the territory of New Mex-

ico, and judge of the Second judicial district court, at
chambers:

"THE TERRITORY ex rel. CHARLES W. LEWIS,  
                v.  
"THE BOARD OF COUNTY COMMISSIONERS OF  
    BERNALILLO COUNTY, ETC.

"These respondents, now and at all times hereafter
saving and reserving unto themselves all and all man-
ner of benefit and exception which can or may be had
or taken to many uncertainties and imperfections in
the said information and writ contained, for answer
and return thereto, or to so much, and such parts
thereof, as these respondents are advised it is or are
necessary for them to make answer and return unto,
these respondents answering and returning, say: It is
true that among the duties imposed by law upon these
respondents was the duty of canvassing the returns of
the election held in the county of Bernalillo, as set
forth in the said writ of mandamus; but these respond-
ents say that the returns of said election, within the
meaning of the statute in such case made and pro-
vided, consist solely of the poll books used at the said
election in the several precincts of the said county,
together with the certificates of the judges and clerks
of the said election made and entered in the said poll
books and returned by the said judges and clerks to
the clerk of the probate court, and ex officio recorder
of the said county of Bernalillo.

"These respondents, further answering and return-
ing, say that the several judges and clerks of election
in the said several precincts of the said county of
Bernalillo, for the election held in the said county on
the Tuesday after the first Monday in November, 1886,
except the said judges and clerks at, in, and for pre-
cinct number ten of the said county of Bernalillo, did
return to the said probate clerk and ex officio recorder
of said county, one of the poll books used at each and
every of said precincts in the said county, except the

poll book used at, in, and for the said precinct number ten, and these respondents further say that they now here bring into court, and make part of this answer and return, true copies of each and every of the said certificates so returned by the said several judges and clerks of election. These respondents, further answering, say that it will appear from an inspection of the said certificates, that many of them are informal, but it sufficiently appears from the said certificates, and from the poll books in which the said certificates are contained, that in the several precincts of said county, exclusive of the said precinct number ten, that the said relator received no more than 1,362 votes, and that the said Jose Manuel Montoya received 1,459 votes; and the said Jose Manuel Montoya, upon the face of the returns, and upon a canvass of all the legal votes cast at said election in the said county of Bernalillo, received the greatest number of votes cast for the said office of assessor, and was elected thereto. These respondents further say that they have never seen any return, if any was ever made, from the said precinct number ten of the said county of Bernalillo, and that they have no knowledge or information sufficient to form a belief as to whether the same judges and clerks of the said election held at and in the said precinct number ten returned the said poll books used at the said election in the said precinct number ten, inside of the ballot box used at the said precinct number ten on said day; nor have these respondents any knowledge or information sufficient to form a belief as to what said poll books, or any certificate contained therein, would show upon an inspection, but these respondents aver the fact to be that the said ballot box used at the said election on the said day, at and in the said precinct number ten, of the said county of Bernalillo, was returned to the said clerk of the probate court and ex officio recorder, closed, locked, and sealed, as required by law, and has ever since been in the custody

and possession of the said clerk, and has remained so closed, locked, and sealed, and these respondents do not know, and have no means of knowing, what, if anything, is contained in the said ballot box. These respondents further say that no contest has been instituted by any person who was a candidate for any office voted for at said election in the said county of Bernalillo on the said day; nor has the said clerk been called upon by any person, after such contest had begun, to supply the tickets so returned to him in the ballot boxes used at said election in the said several precincts of the said county, or any of them, for examination; nor has the said probate clerk given to the opposing candidate of such person five, or any other number of days' notice of any such application; nor have the parties to any such contest ever assembled before your respondents for the purpose of having any examination of the ballots contained in the said ballot boxes, or any of them, examined in pursuance of law, and therefore these respondents say that it is and would be unlawful and a violation of the statute in such case made and provided for these respondents to open the ballot boxes returned by the said judges and clerks of the said precinct No. 10 of the said county of Bernalillo, for the purpose of taking therefrom the poll books, if any be contained therein; and these respondents aver and charge the fact to be that if they are compelled by this honorable court to open the said ballot box for the purpose of taking therefrom the said poll books, that then, and in that case, they may be unable to count the votes so cast at the said election in the said precinct No. 10 because of the informality of the certificate contained therein, and of the insufficiency of the return; and these respondents say that they have no knowledge or information sufficient to form a belief as to whether or not the said poll books used at said election, at, in, and for said precinct No. 10 (if they were so returned in-

side the ballot box as alleged in the information and writ herein) contain any sufficient return as to the number of votes herein; and they therefore deny that any such sufficient return was made by the said judges and clerks of the election held on the said day, at, in, and for the said precinct No. 10, whether inside the ballot box or otherwise; and they therefore deny that the relator was in any wise injured or prejudiced by their failure so to open the said ballot box. These respondents say that as to the votes cast for the relator and the said Jose Manuel Montoya in the said precinct No. 1, of the said county of Bernalillo, it sufficiently appears from the said poll books that the said Jose Manuel Montoya received 187 votes, and the said Charles W. Lewis received 12 votes. These respondents further say that, as to the votes cast for the relator and the said Jose Manuel Montoya in the said precinct No. 10 of the county of Bernalillo, it sufficiently appears from the said poll books that the said Jose Manuel Montoya received 111 votes, and the said Charles W. Lewis received 10 votes. These respondents say that, as to the votes cast for the relator and the said Jose Manuel Montoya in the said precinct No. 12 of the county of Bernalillo, it sufficiently appears from the said poll books that the said Jose Manuel Montoya received 83 votes, and the said Charles W. Lewis received 128 votes. These respondents say that, as to the votes cast for the relator and the said Jose Manuel Montoya in the said precinct No. 8 of the said county of Bernalillo, it does not sufficiently appear for whom said votes were cast, and it is impossible to be ascertained from the face of the return; that is to say, the face of the return fails to show how many votes were cast in the said precinct for the said relator and how many for the said Jose Manuel Montoya, and so these respondents say that the vote of the said precinct was not counted. These respondents now here make proffer to the court

of all original returns furnished to them by the probate clerk and ex officio recorder of the said county of Bernalillo, in the territory of New Mexico, on the occasion of their meeting as a board of canvassers for the purpose of canvassing the election returns, and also bring into court here the ballot box returned to the said clerk of the probate court by the judges and clerks of the election of precinct No. 10, and submit themselves to the order and direction of this honorable court, protesting that they have fairly and honestly discharged the duty imposed on them by law, in canvassing the returns of the said election and declaring the result thereof. And these respondents ask the court to inspect the evidence so offered with this answer, and that upon such inspection the said alternative writ of mandamus may be dismissed; and, having fully answered, these respondents pray to be hence dismissed with their costs in this behalf most wrongfully sustained.

"NEILL B. FIELD,
"Attorney for Respondents."

The amended alternative writ which issued on the amended information followed it in substance, and whatever issue arose was upon this amended writ and the answer thereto. The case was tried upon the amended alternative writ, the answer, and such documentary and other evidence as was tendered to the court by and with the answer. The record, folio 103, says: "And thereupon, on motion of counsel for the relator, the said cause was heard upon the amended alternative writ and the respondents' answer thereto." Succeeding such record is the following: "Now come the respondents by their counsel, and file their answer to the amended alternative writ heretofore issued in this cause, together with all the original returns and poll books in the possession of the clerk of the said respondents, together with the ballot box of precinct number 10 of the said county of Bernalillo, as exhibited to their said answer."

In the answer the respondents say: "They now, here, make proffer to the court of all original returns furnished to them by the probate court * * * and also bring in the ballot box of precinct number 10, and submit themselves" to the judgment of the court. The court found against the defendant, and that the returns on their face established that a majority of the votes cast in the county, as appeared from the returns before the court, were cast for the relator, and that he was therefore legally entitled to the certificate of election, and that it was the duty of the defendant, acting as a board of canvassers, to deliver it to him. The court by its writ ordered that the returns be canvassed by defendant on the certificate delivered. The following in this court is assigned as error.

(1) In awarding a peremptory mandamus against the respondent, without any evidence upon the issue of facts raised by the answer.

(2) The command of the peremptory writ to count all the votes shown by the returns, certificates, and poll books returned by the judges and clerks of said election for all the several precincts of the said county, including the returns, certificates, and poll books of precinct number 10 of said county, and excepting the returns, certificates, and poll books of said precincts numbers 1, 8, and 12, and that "you do declare the result of said election as to the office of assessor, and issue a certificate of election to the relator, Charles W. Lewis."

First, as to the objection "that the court failed to impanel a jury to try the issue of fact." It may be observed, if it is a proper construction of section 2000 of the compiled laws, that a jury is to be impaneled as in ordinary law cases, then it also follows that all subsequent proceedings are to be taken in the same way. Section 2000: "No other pleading or allegation is allowed than the writ and answer. They shall be con-

strued and amended in the same manner as pleadings in a civil action, and the issues thereby joined shall be tried and further proceedings had in the same manner as in a civil action." The same argument which requires that a jury shall be impaneled also requires that the succeeding steps be in accordance with the practice in civil cases at law, and, in that event, section 2197 would apply. "Exceptions to the decisions of the court upon any matter of law arising during the progress of the cause must·be taken at the time of the decision." We have not found in the record that any request was made by the respondent to have the questions involved submitted to the jury, or of any objection made at the time to their consideration by the court. A court should have opportunity, in cases of law at least, to consider the very question presented in the supreme court. It often occurs that a point may be passed upon inadvertently when if the attention of the trial court is at the time of the ruling called to it the decision will be otherwise. It is very doubtful if the construction which appellant contends for is correct as to the right to a jury trial, if that question is before us. It is clear, however, that in passing upon the question the court below was acting upon the appellant's request. "And these respondents ask the court to inspect the evidence so offered with this answer, and that upon such inspection the said alternative writ of mandamus may be dismissed." It was an express submission to the court. The respondents, as they show, brought into the court all the returns, the certificates, poll books, ballot box, and placed them before the judge, and invoked his judgment as to the legal sufficiency to justify the action of the board. They say, "Here is all the original evidence which was before us and upon which we acted. We submit ourselves to the order and direction of this honorable court." After such a submission, without the most

·remote suggestion even that it was desirable that a jury should be called, we think it should be held, even if a jury could be impaneled—a point not here decided—that such action was a waiver of the jury. In any event it is difficult to perceive what duty there was for a jury to perform. Appellant is not in a position to complain that there was no submission to a jury. There is nothing in the record to indicate that the conclusion reached by the court below, as to the effect of the evidence placed before it by respondent is incorrect. Aside from what purports to be the poll books from precinct number 10, there is none of the original evidence in the record, and, in the absence of a contrary showing, the presumption is in favor of the action of the court below.

It can not be said, in view of the record, that the court did award a peremptory mandamus without any evidence upon the issue of fact raised by the answer. The respondent, along with the answer, carried into court that very evidence and placed it before the court, not as a mere exhibit, but as proof on the matter submitted, and said, following the language of the answer: "And these respondents ask the court to inspect the evidence so offered with this answer," and ask to be dismissed. When asked by the respondents to inspect the evidence thus placed before the court and to judge of its legal sufficiency, was the court to turn away from the request, refuse to inspect and refuse to determine? The court received the proof thus placed before it, and did as the respondents asked, but because the court reached a different conclusion as to its effect from the conclusion asked by respondents they can not now complain of the action of the court in following the request made, so it is apparent this objection is not well taken. In the court below the peremptory writ commanded, among other things, that the respondent "declare the result of said election as to the office of assessor of said

county accordingly, and that you do issue a certificate
to the said office of assessor to the said relator,
Charles W. Lewis.'' It is objected by appellant
that the court could not legally direct by name, through
the command in the writ, the person to whom the
certificate should issue; but, as we understand his con-
tention, that the court could at furthest only direct a
canvass, and that the board of canvassers should
deliver the certificate to whomsoever might have the
majority of the votes shown on the returns.   State ex
rel. Metcalf v. Garesche, 65 Mo. 483, is directly in
point.   In that case it was a question as to how the
returns for precinct number 57 should be counted,
whether as 270 votes for R. Graham Frost, or as 290
votes for him.   The circuit judge who tried the issue
on the mandamus found from the evidence that the
figures on the poll book of precinct number 57, repre-
sented and showed, as returned to the judges, that
Frost received 270 votes in that precinct, but that after-
ward the figure 7 was changed to 9, making it after the
change to appear that 290 votes were cast for Frost;
and so the peremptory writ commanded that the
returns should be counted, not as they appeared on the
face of the returns at the time of the hearing, but as
they stood at the time of the filing of the poll book, and
directed not only that the returns be counted, but as
well how they should be counted.   The supreme court
of Missouri approved of this action of the lower court,
using the following language:   ''Having ascertained
which was the true return, and that the canvassing
officers had failed or refused to count it, thus leaving
their legal duty unfulfilled, the peremptory writ com-
manded its performance.   It will thus be seen that the
right to determine the specific legal duty of ministerial
officers, such as the defendants are, necessarily results
from the very nature of the proceedings by mandamus.
The writ of mandamus does lie to compel the perform-

ance of a particular ministerial act. It not only requires the ministerial officer to do his duty, but also indicates what that duty is. A peremptory writ of mandamus to count the votes certified by the judges and clerks, without ascertaining which was the vote so certified, would be a mere brutum fulmen, as it could never be determined from a certificate of obedience whether the writ had in fact been obeyed." The case cited supports the action of the court below as to the point now under consideration. "Not only will mandamus lie to compel action by a board of canvassers, but the court will direct what returns shall be canvassed, and, when the law makes it their duty to do so, will compel the issue of a certificate of election to the person apparently entitled thereto." 4 Wait, Act. & Def. 369; Kisler v. Cameron, 39 Ind. 488; People v. Hilliard, 29 Ill. 419; In re Strong, 20 Pick. 484; High, Extr. Rem., secs. 60, 61. The authorities are conclusive as to the right of the court to give the particular direction named in this writ. The law is quite well settled that such officers act only ministerially, and not judicially, and the power of the court to compel ministerial officers to act is without doubt. To this effect are the following authorities: "The doctrine that election and canvassing boards and return judges are ministerial officers, possessing no discretionary or judicial power, is settled in nearly or quite all the states." McCrary, Election Laws, sec. 84, where the following authorities are cited in support of that principle: Dishorn v. Smith, 20 Iowa, 212; State v. Cavers, 22 Iowa, 343; Attorney General v. Barstow, 4 Wis. 749; People v. VanCleve, 1 Mich. 362; Thompson v. Circuit Judge, 9 Ala. 338; Mayo v. Freeland, 10 Mo. 629; State v. Harrison, 38 Mo. 540; State v. Rodman, 43 Mo. 266; State v. Steers, 44 Mo. 228, 229; Bacon v. York Co., 26 Me. 491; Taylor v. Taylor, 10 Minn. 107; O'Ferrall v. Colby, 2 Minn. 180; Marshall v. Kerns, 2

Swan (Tenn.), 180. In Bull v. Southwick, 2 N. M. 321,
upon statutes substantially the same in legal effect as
those now in force on this subject, the supreme court
of this territory held to the same rule.    Associate Jus-
tice BRISTOL, whose opinions are always able, in
delivering the opinion of the court in that case made
some observations worthy to be quoted and considered.
In commenting on the history of the case then before
him he said: "As such board of canvassers they
assumed judicial power to pass upon the illegality of,
and reject votes, without any other ceremony than
because partisan bystanders challenged them as illegal.
In this way hundreds of votes were thrown out, and
the result of the election arbitrarily changed.    This is
but another illustration of what experience has long
since demonstrated, which is, that if such judicial
power should be conferred upon mere canvassing
boards, to be exercised at the close of a hotly con-
tested election, in the absence of real parties interested,
and almost always with the partisan advisers of such
boards in the background, their sitting would be
marked by the exercise of arbitrary power that would
be more aggressive and odious than that of the ancient
court of star chamber."    While there are no such
flagrant abuses of power in this case as there referred
to by the learned justice whose opinion has been
quoted, yet the reasons given have been sufficient to
the legislative department to prevent it from extending
to canvassing boards in this territory a power beyond
judicial control and which might lead to unjust results.

It is proper to consider an additional question.    It
appears that the poll books from precinct number 10
were locked up in the ballot box, and it seems to have
been a question as to the power of the board to open
the box and take therefrom such returns.    To hold
that the board of canvassers are precluded from unlock-
ing the ballot box to procure therefrom the returns

would be to establish a rule which would enable the election judges to absolutely control the issuing of certificates of election. It would often occur, as in this case, that by thus locking up in the box the returns of a single precinct the voters of the precinct would be disfranchised, the will of the majority defeated and the will of the minority substituted in its place. No such ruling should be made, unless compelled by the statute law in express words. If, in section 1188, the words "examine the votes" are construed to mean examine the returns, clear authority exists for opening the box. It is, however, plain that no such authority in words is needed. The power to open the ballot box and take out the returns and again lock up the box, without disturbing the votes, all done in a public manner, is incident to the duty to canvass the returns. The ballot box seems to have been sent forward by the proper legal authority and to have been placed in the proper legal custody. The returns, being in the box, were, in legal contemplation, before the board of canvassers, and they had the power and authority, as an incident to the legal duty upon them to canvass the returns, to open the box and extract therefrom the returns. To do this required no interference or tampering with the ballots inside the ballot box. A board which the law would intrust to canvass the returns and certify the result could also be intrusted, especially as the act might be an open one, while in public session, to unlock the box and take out the returns. This the board should have done in the first instance, without awaiting the command of the court.

We find no error in the record. The judgment of the court below is affirmed.

HENDERSON and REEVES, J. J., concur.