## WARD v ENGLISH et

Ohio Appeals, 7th Dist, Monroe Co

## OPINION

By ROBERTS, J.

It thus becomes apparent that the real, and in fact, the only issue in this case, is as to whether or not the election upon the proposition of the bond issue was carried by a majority vote, and whether the de-

claration of the Board of Education of said township, at its meeting of December 27, 1924, declaring said bond issue to have received the greater number of votes in favor thereof, was true, justified by the fact, and whether said board of education was authorized to determine said issue as attempted.

Washington Township consists of two precincts, Graysville Precinct and Rinard Mills Precinct.

After the election the Board of Education held a meeting November 17, 1924, November 27, 1924 and December 17, 1924. The records of these meetings are found on pages 19, 20, 21 and 22 of the bill of exceptions. From the record of the meeting of November 17, 1924, the following is found. "The canvass of the school building bond issue of $30,000.00 was Rinard Mills Precinct, Yes, 16, no, 46; Graysville Precinct, yes, 143, no, 113. Total yes, 159; total no, 159. Owing to the fact that the election board failed to make the proper return to the clerk Mr. Allen moved to table the above issue and adjourn to meet to November 27. Motion carried.

The record of the meeting held November 27, so far as pertinent, reads: 'The question of the school building bond issue of $30,000.00 was discussed and as of this date the Board has been unable to secure from the deputy supervisor of elections the mutilated, unmarked and uncounted ballots which the election board, through an oversight sent to the said supervisor of elections. Therefore the board of education is unable to certify the result of said bond issue. Mr. Harmon moved that the Clerk, L. D. Petty, be instructed and authorized to have the deputy supervisors of elections return to the board of education the above named ballots if it can be done so in any way." Motion carried.

At the meeting of December 27th, 1924, so far as pertinent, the following appears: "The Clerk reports that he has been successful in obtaining the blank, mutilated and uncounted ballots which the judges of election sent to the deputy supervisors of elections, as stated in the minutes of the preceding meetings. W. P. Harmon moved that the board of education proceed with the canvass of the votes as was case on the $30,000.00 school building bond issue. Ed Cline seconded the motion." Carried. "The canvass of the votes was found to be as follows: there being found one ticket among the uncounted ballots, which the board of education finds that should have been counted in favor of the issue." Thus adding one vote to those previously counted in favor of the issue the final vote as thus tabulated was 160 for the issue and 159 against. The record further shows the following: "The greater number of votes being cast in favor of the bond issue it is declared carried and the Clerk ordered to certify the same to the County Auditor."

Neither the record of the board of education nor the evidence in the case indicates why this ballot so counted in favor of the issue was so counted or what may have been its appearance. It is indicated in the evidence, that it was one of three ballots uncounted by the judges and clerks at the election, and sealed in an envelope, as provided by law, and was transmitted by the board of elections to the board of deputy state supervisors. from whom, presumably, it was obtained by the board of education. This ballot appears to have been lost soon after being so counted and neither it nor the envelope with the other two ballots has since been found. The record, therefore, does not indicate why this ballot, which was rejected by the election board, was counted by the board of education.

It is the contention of the defendant that the board of education had no authority in law and no right to add this ballot to the number previously counted as voting yes, and determine a majority vote in favor of the bond issue. §5120 GC reads as follows:

"In school elections, the returns shall be made by the judges and clerks of each precinct to the clerk of the board of education of the district, not less than five days after the election. Such board shall canvass such returns at a meeting to be held on the second Monday after the election, and the result thereof shall be entered upon the records of the board."

This section of the Code, authorizing the Board of Education to canvass such returns only, it becomes important to construe the word "canvass" and determine what action is authorized by the use of this word.

In the case of Calton, Clerk v The State ex Richardson, 43 Oh St 652, it is said on page 658 of the opinion:

"We can not deal with this question more satisfactorily to ourselves than to submit, with our unqualified approval, what is said concerning this return by the member of the court below, Smith, J., who dissented from the action of the majority:

"'Judge McCrary in his work on Elections, sums up the law thus: "§81. It is well settled that the duties of canvassing officers are purely ministerial, and extend only to the casting up of the votes, and awarding the certificates to the person having the highest number; they have no judicial power. In State v Steers, 44 Mo. 223, which was a case in which the canvassing board had undertaken to throw out the returns from one voting precinct for an alleged informality, the court said: Where a ministerial officer leaves his proper sphere, and attempts to exercise judicial functions, he is exceeding the limits of the law, and is guilty of usurpation. And again: To permit a mere ministerial officer arbitrarily to reject returns at his mere caprice or pleasure, is to infringe or destroy the rights of parties without notice or opportunity to be heard, a thing which the law prohibits'."

In the case of State ex v Tanzey et, 49 Oh St page 656, first and second paragraphs of the syllabi read as follows:

"1. The duties of the board of deputy supervisors of elections, in making the abstracts of the votes returned by the officers of the election precincts of the county, are purely ministerial, and are limited to compiling the votes shown by the tally-sheets so returned, and setting down to each candidate the aggregate number of votes so appearing to have been cast for him, and to certifying and transmitting the abstract so made, to the proper officer.

"2. The board is without authority to hear evidence to contradict or explain the tally-sheets, or act upon information not appearing on their face, or to open or count ballots returned by the precinct officers, as uncounted ballots, concerning the legality of which, doubt or differences of opinion existed in the minds of the judges of election."

And at page 661:
"It is clear the board had no such power. Their authority extends no farther than to 'make abstracts of the votes' returned by the precinct officers, in the manner provided by §§2980, 2989 and 2994 of the Revised Statutes, and certify and transmit them to the proper officer, as required by law. To make the abstracts, is simply to summarize and compile the votes shown by the tally-sheets returned from all the election precincts of the county, and set down to each candidate the aggregate vote shown by those tally-sheets to have been received by

him. The duties of the Board of Deputy Supervisors in this respect, are purely ministerial, and in their performance of them they can not look beyond the returns made to them. The provision contained in §24, of the act of April 18, 1892, that if there are left uncounted any ballots concerning the legality of which there is doubt or difference of opinion in the minds of the judges of, election, they shall not be destroyed, but sealed up and returned with returns of the election 'for such judicial or other investigation as may be necessary', was intended, we think, to preserve the ballots, so they may be used as evidence in the event of a contest, or other investigation before a tribunal or body having jurisdiction to inquire into the regularity and validity of the election, or determine who was elected, and confers no authority upon the board of deputy supervisors, in making up the abstracts, to enter upon such an investigation."

In the case of State ex Graves, etc., 91 Oh St, page 113, it is said:
"The legislature has defined clearly the purpose for which the ballots are preserved. They can be recounted in cases of contested elections only. It is to be observed that the ballots are to be opened and errors in counting corrected by the court or body trying—the contest, and they are to be opened only in open court or in open session of such body. No reference is made in this section to the secretary of state. The deputy state supervisors are made the custodians of the ballots, but with no authority whatever to open or recount them."

"So there can be no doubt as to when or by whom or where a recount of the ballots can be had. There must be a contest before there is the right in anyone to demand a recount. The recount must be made by the court or by the body trying the contest and in open court or before the body in open session."

In the case of Merkle v Newton, Treasurer, etc., 64 Oh St, page 493, the court in the opinion on page 496, after stating in substance that the sole ground upon which the right to relief is sought is predicated upon the action of the county auditor in placing a tax upon the duplicate, which was claimed to have been without authority of law, said:

"Nor, can a tax be justified merely upon equitable considerations. Public burdens of

that nature can be sustained only when authorized by positive law. And when such burden is illegally imposed, it is a statutory right of the party against whom it is charged to stay its collection by injunction."

The above quotation is pertinent upon the proposition as to how and where ballots can be recounted.

In §255, Volume 20, Corpus Juris, on page 200, under the subject "Elections", it is said:

"It is a common error for a canvassing board to over-estimate its powers. Where there is no question as to the genuineness of the returns or that all the returns are before them, the powers and duties of canvassers are limited to the mechanical or mathematical function of ascertaining and declaring the apparent result of the election by adding or compiling the votes cast for each candidate as shown on the face of the returns before them, and then declaring or certifying the result so ascertained. They have no power to go behind the returns and ascertain the qualifications of the voters or otherwise inquire into the regularity of the election. Fraud, bribery, violence or other matters affecting the regularity of the election are to be passed on by the proper tribunal and not by the board of canvassers. The canvassers are not authorized to determine the legality or illegality of the votes cast at the election; to decide upon the official title of the election officers; to entertain a contest of the election; to determine the constitutionality of a statute; to inquire into the validity of the certificates of nomination of candidates; to pass upon the eligibility of a candidate to office; to decide whether there are any vacancies in any offices; to determine what was done at an election in a previous year; or to reverse an act of their predecessors."

Under note on page 203 of 20 Corpus Juris, the text reads as follows:

"In the absence of a statute conferring it, a board of canvassers has neither express nor implied power to recount the ballots. Neither are they authorized to open an envelope containing voted ballots for the purpose of searching for that portion of the returns upon which the statute requires the canvass to be made; but there is authority to the contrary. Where, however, under the statutes of the state, the ballots constitute part of the returns they must be canvassed together with other papers constituting the returns."

In Attorney General's Opinion No. 1363, Volume 1, 1930, Opinions of Attorney General, in reply to an inquiry regarding a condition similar to the one at bar, the Attorney General said:

"The power of the board of education in canvassing this vote is ministerial and it cannot go into the irregularity through which no ballots were provided in two of the three townships comprising the school district."

In Attorney General's Opinion No. 1291, under date of December 13, 1929, to the Secretary of State, the syllabus reads:

"After an election has been held and the returns are certified to the proper canvassing official or board, it is the duty of such official or board to proceed to canvass the vote and determine the persons duly elected to the offices to be filled at such election, if it is possible upon the face of the returns to determine such result.

It is not within the province of such canvassing official or board to pass upon questions of irregularities in connection with such election resulting from the use of improper forms of ballot or otherwise, since the duty of such official or board is ministerial in character and confined to a consideration of the returns alone."

It is apparent from the authorities cited and quoted that the authority given by the word "canvass" means only, and can be construed only, to compute and tabulate the number of votes shown upon the returns certified to such board, and that no authority is given to the board of education to consider or determine a contest or to add to or subtract from the number of votes as shown by the poll books.

Sec 5090 GC reads:

"If there are any ballots placed in the envelopes for uncounted ballots, such envelopes shall be sealed and returned to the deputy state supervisors with the returns of the election, to be by them counted. At least one day before the beginning of the official count, the board of deputy state supervisors, in the presence of one person duly authorized by the chairman of each county controlling committee, and the chairman of the committee of each set of candidates nominated by petition shall open the envelopes containing the uncounted bal-

lots and determine what part and for whom each such ballot shall be counted, and proceed to count and tally the same. Said ballots shall be further preserved for such judicial or other investigation as may be necessary."

From this section it is learned that uncounted ballots shall be sealed up in the envelope and returned to the deputy state supervisors with the returns of the election, by them to be counted.

Sec 5093 GC provides of what the return shall consist.

Sec 4785-147 GC (Analagous §5090-1 GC) providing for the preservation of ballots and their ultimate destruction, and for the opening of ballots in contested cases.

Sec 4785-166 GC (Analogous §5169-4 GC) provides explicitly for a contest of the election and that an action of the nature of the one under consideration "be, in the case of all other officers or issues except judicial offices, such contest shall be heard and determined by a judge of the Court of Common Pleas of the county in which the contest arose." No authority is found, and none is cited, giving the right to the board of education to determine this issue further than to canvass the vote, as hereinbefore stated. And furthermore, no authority is found, nor cited, authorizing such contest elsewhere or otherwise than in the Court of Common Pleas. Decisions of other states have been cited, which are not herein considered, for the reason, that we are not informed as to the statutes of those states.

The conclusion is thus reached that the board of education had no authority to, in any way, change the result of the election otherwise than as submitted to it, and as first counted by it, as a tie vote, whereby there was not a majority in favor of the bond issue and it thus failed. The action of the board of education being thus powerless to change the result of the vote, otherwise than as a tie vote, it is not claimed there was any contest or determination by any authority elsewhere or otherwise, so the vote still stands as a tie vote, without legal challenge or contradictions.

It is not understood from the briefs of counsel for the plaintiff, that any issue is otherwise raised than upon the legality of the determination of the vote by the board of education. It is said in brief of counsel for plaintiff, "The issues are very narrow and the case hinges on the authority of a board of education to canvass and declare

the results of a school election." However, it is alleged in the reply of the plaintiff, to the amended answer—in effect, that the defendant stood by and made no complaint concerning this election or the result thereof, and until after the bonds had been sold and the proceeds thereof, expended in the erection of a school building. By this allegation it may be understood that the plaintiff had in mind the claiming of estoppel on the part of the plaintiff, to ask for affirmative relief against the collection of the tax, by reason of this failure of the defendant to object.

It will be recalled that the election was held in the fall of 1924, that the action to foreclose for taxes was commenced by the plaintiff December 28, 1931, and then by appropriate pleadings the defendant alleged the illegality of the conduct of the election by the board of education and sought affirmative relief by injunction. It is not indicated in the evidence that the defendant voted at the election or had any knowledge concerning the election or the result thereof, until this assessment, several years afterwards, was placed upon the tax duplicate.

It is said in the syllabi of **Lear v Halstead, 41 Oh St, 566**, fourth paragraph:

"Where no jurisdiction is thus acquired by the county commissioners to order an extension of the bounds of the turnpike road, a resident owner of land that lies within the bounds of the territory as proposed to be extended and that has been taxed for the purpose of constructing the road, will not be estopped from objecting that the tax was illegally assessed, if such owner did not participate in causing the improvement to be made, and had no knowledge until after the completion of the improvement that there had been no sufficient petition for extending the bounds of the road, and it does not appear that any special benefit accrued to the owner's property from such improvement."

**Tone v Columbus, 39 Oh St, 281**, the fifth paragraph of the syllabi reads as follows:

"Above participation in causing the improvement to be made will estop the party engaged therein from denying the validity of the assessments; but to create an estoppel from silence merely, it must be shown that the owner had knowledge: 1. That the improvement was being made; 2. That it was intended to assess the cost thereof or some part of it, upon his property; 3.

That the infirmity or defect, in the proceedings existed which he is to be estopped from asserting; and 4. It must appear that some special benefit accrued to his property from such improvement which it is inequitable, under the circumstances, he should enjoy without compensation."

See also **Kelly v The City of Cincinnati, et, 6 Oh Ap Rep 461.** Also **Lewis, Auditor, v Symmes et, 61 Oh St, 471.**

In the case of **City of Bucyrus v The Pennsylvania Railroad Company, 127 Oh St, 302,** the third paragraph of the syllabus reads as follows:

"A railroad company does not lose or waive its right to question such assessment in a court of equity, by failure to object either to the improvement or the assessment as provided by §3848 GC or any other section, as such right was amply provided for by §12075, GC."

And for a general discussion of estoppel under similar conditions as herein, see **16 Ohio Jurisprudence title "Estoppel," §88, commencing on page 688.**

From a consideration of the decisions upon this subject the conclusion is reached that the defendant is not estopped from making his defense and asking for relief, as herein.

It is further concluded that the provisions of §12075 GC are ample to give to the defendant the relief herein prayed for.

The final conclusion of this court is that the plaintiff is not entitled to recover or assert a lien for taxes arising out of the alleged bond issue, and the defendant is granted the relief prayed for in his amended petition.

PHILLIPS and CARTER, JJ, concur.